## No. 2277.

### COLEMAN, MATHIS & FULTON *v.* A. M. DUNMAN ET AL.

1. LIEN—EQUITY.—One who acquires an interest, even for a valuable consideration, with notice of any existing equitable claim or right in the same subject matter held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase.  A lien upon a stock of cattle is such an equity as will be protected against persons subsequently acquiring an interest in the stock with knowledge of its existence.

2. EQUITY.—Equity postpones him who is prior in point of time to him who has been induced to purchase from want of knowledge of the opposing title, which it was the duty of the holder of that title to communicate.

3. DIGNITY OF CONFLICTING LIENS.—One character of lien has no superiority over another on the question of notice, when brought in conflict with a bona fide purchaser for valuable consideration.

APPEAL from Goliad.   Tried below before the Hon. H. Clay Pleasants.

Coleman & Stockley agreed to pay a note held by T. M. Coleman against R. L. Dunman, the intervenor, for the sum of five thousand dollars, and this payment was part of the consideration that was to pass·from Coleman & Stockley to intervenor for a stock of cattle sold by him to them.   Coleman & Stockley made an arrangement with appellants by which the latter were to pay off the above note in consideration of which, and in consideration of other indebtedness of Coleman & Stockley ·to appellants, the latter were to gather eight hundred head of cows out of the former's stock, at ten dollars per head.   It appears that intervenor knew nothing of this arrangement between Coleman & Stockley and appellants until after he had delivered the bill of sale for his stock to Coleman & Stockley.   The intervenor was not a party to such agreement.   He knew it afterwards

and raised no objections, as he thought there was enough cattle in the Coleman & Stockley stock to satisfy his claim and that of appellants.

The court found it as a fact that the intervenor knew nothing of the agreement between Coleman & Stockley and appellants, by which the latter were to get eight hundred head of cows out of the stock of the former, until after intervenor had closed his trade with Coleman & Stockley and after his lien had been fixed.

The lien claimed by intervenor was created by the contract executed between him and Coleman & Stockley in December, 1877, and according to finding of court was consummated in January, 1878. Appellants had notice of the same. The intervenor knew nothing of appellants' claim until afterwards.

Appellants had gathered eleven hundred and twenty-five head of cattle, upon which intervenor had a lien. Intervenor had only gathered, of the one thousand head he was entitled to under his contract, some three hundred and sixty-five head. The court gave judgment for the value of six hundred and thirty-five head at the price agreed on.

The court found that the agreement by which Coleman & Stockley were to assume the payment of the five thousand dollar note was a condition precedent to the consummation of the trade between them and intervenor.

Intervenor testified that the bill of sale for the cattle and the stock book were not delivered until after this note was handed him by Coleman & Stockley paid, and that intervenor had no knowledge at the time of the manner in which same had been satisfied.

*Glass & Collender*, for appellants.

*Stayton & Kleberg*, and *S. F. Grimes*, for appellee.

WILLIE, CHIEF JUSTICE. This case was before us on a former occasion, and is reported in 59 Texas, page 199. We then held that the agreement that Dunman should gather one thousand head of cattle out of the stock of Coleman & Stockley, in part payment of the purchase money of the stock of cattle sold by him to them, subjected the former stock to a lien or charge to the extent of the value of the thousand head to be gathered from it. The cause was remanded for a new trial, and when again heard, the court below gave effect to the agreement in accordance with

the decision of this court. The district judge held further that the lien of the agreement took precedence over any claim upon the same stock of cattle held by the appellants; and this ruling presents the only question for decision upon this appeal.

The agreement between appellants and Coleman & Stockley, by which the former assumed payment of Dunman's note to Thomas Coleman took place, between the time when the contract of sale was agreed upon between Dunman and Coleman & Stockley, and the time when it was consummated by a delivery of the bill of sale. It was found by the judge that Dunman had no notice of this agreement till after the bill of sale was delivered, and this is not disputed.

Dunman's lien was contracted for when the trade between him and Coleman & Stockley was agreed upon. It certainly took effect when the trade was consummated. It was futher found by the judge that Mathis, of the firm of Coleman, Mathis & Fulton, knew at the trial that firm agreed to pay the note held by Thomas Coleman; that Dunman was to have a lien upon the thousand head of cattle owned by Coleman & Stockley, including those sold to them by Dunman. There was some conflict of testimony upon this point, but the finding is supported by sufficient testimony and is not excepted to and must therefore be treated as correct.

It is a well known principle of equity that one acquiring an interest, even for a valuable consideration, with notice of any existing equitable claim or right in the same subject matter held by a third person, is liable in equity to the same extent, and in the same manner as the person from whom he made the purchase. (2 Pomeroy's Equity, section 688.)

This court has already held that the contract between Dunman and Coleman & Stockley gave to the former a lien upon the stock of cattle, which, of course, is such an equity as would be protected against persons subsequently acquiring an interest in the same stock with a knowledge of its existence. Appellants had knowledge of Dunman's claim before they contracted for their own, and had the trade between Dunman and Coleman & Stockley been consummated at any time before the appellants obtained their lien, it is clear, under the principle stated, that their rights would have been postponed to those already acquired by Dunman. It would have been a fraud upon Dunman for his vendors, without his consent, to give another person priority of lien as against him; and appellants having notice of his right,

could not, in good conscience, accept and enforce such priority in their own favor. Whilst Dunman's contract with Coleman & Stockley was not carried into immediate effect, yet when consummated it was without change as to the agreement about gathering the one thousand cattle from the stock of Coleman & Stockley. Appellants had knowledge of this agreement from a date prior to their own agreement, as to the eight hundred cows, down to the time when the trade was finally executed and Dunman's cattle transferred by bill of sale to Coleman & Stockley. Yet they failed to inform Dunman as to the contract they had made for a right to the eight hundred head of cattle, and permitted him to part with his stock under the impression that he had the only claim there was for gathering cattle from Coleman & Stockley's stock in satisfaction of any lien or debt whatever.

They knew of Dunman's intention to part with his property for a lien upon the stock on which they had secured a claim, and yet permitted him to do so in ignorance of their claim. They delivered to Coleman & Stockley the note which Dunman was to receive in part payment for his stock, and thus furnished that firm with the means of obtaining Dunman's cattle, and yet said nothing to him as to the terms upon which Coleman & Stockley had acquired the note. Knowing their own right and Dunman's intention to perfect his lien, it was, to say the least, gross negligence on their part not to inform him of the nature of their claim. In such cases equity postpones him who is prior in time, to him who has been induced to purchase from want of the knowledge as to the opposer's title, which it was the duty of the holder of that title to communicate. (Pomeroy's Equity, section 687.)

It matters not what was the nature of the appellants lien, or that it was acquired by an advancement toward the purchase money of the cattle bought by Dunman. One character of lien has no superiority over another on the question of notice when brought in conflict with a bona fide purchase for valuable consideration. Even the vendor's lien upon land yields to a purchaser without notice who has paid value for the land. If a lien which in any case springs from the nature of a contract itself, when not waived, can be thus postponed, there is no reason why one which would not have existed but for an express contract between the parties should not meet a like fate.

The other questions raised by the record became unimportant in view of the principles upon which this decision is based. Dun-

man having gathered only three hundred and sixty-five head out of the one thousand sold him by Coleman & Stockley was still entitled to six hundred and thirty-five head to make up the one thousand head which he was to receive out of the stock of the parties with whom he had traded. The value of that number of cattle was what the judgment below gave him.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Opinion delivered February 15, 1887.