UNION PACIFIC RAILWAY COMPANY, APPELLANT, V. DOUGLAS COUNTY BANK ET AL., APPELLEES, IMPLEADED WITH J. ADAMS ET AL., EMPLOYES, APPELLANTS.

FILED NOVEMBER 7, 1894.    NO. 5495.

Contract for Transferring Freight: ASSIGNMENT: RIGHTS OF LABORERS TO LIEN ON FUND CREATED: LIABILITY OF ASSIGNEES. W. had a contract with a railway company for loading and unloading cars and transferring freight, the compensation to be payable monthly. W. requiring money to carry on the business he procured P. and C. to make their joint note to a bank, the proceeds of which were passed to W.'s credit. For the purpose of securing P. and C. he delivered to C. the contract with the railway company indorsed as follows: "For value received, I hereby sell, assign, and transfer to J. R. C. all my right, title, and interest in and to the above contract, hereby authorizing and empowering him to do any and all manner of things in the premises as I myself could." C. then wrote an

assignment upon the contract and delivered it to the bank as security to the note. There was at the time nothing due W. under the contract. When the note matured W. failed to pay his employes, who demanded that the railway company protect them. C., and the bank also, claimed the funds in the hands of the company under the assignment. The railway company filed a bill of interpleader, making the bank, P., C., and the employes defendants. All parties yielded to the proceeding and set up their claims upon their merits. *Held*, (1) That the assignment of the contract by W. to C. was intended not merely as an assignment of the moneys to be earned but an assignment of the whole contract *cum onere;* (2) that the assignees could not in equity be permitted to receive the advantages of the contract without discharging its obligations; (3) that inasmuch as the employes by garnishment proceedings might have obtained payment from the fund in dispute by actions against W. or his assignee, the institution of this suit having prevented a resort to such proceedings, the court should herein distribute the fund as if such proceedings had been in fact taken; (4) under the foregoing circumstances, the equity of the employes to the fund held superior to that of the assignee.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

The facts are stated by the commissioner.

*Chas. Offutt*, for employes, appellants:

Any assignment of the contract was subject to all equities, not only between the parties thereto, but to all equities which third persons could enforce against the assignor. (2 Pomeroy, Equity Jurisprudence [2d ed.], secs. 703, 708, 709; *Davies v. Austen*, 1 Ves. [Eng.], 247; *Bush v. Lathrop*, 22 N. Y., 535; *Trustees of Union College v. Wheeler*, 61 N. Y., 105; *Green v. Warnick*, 64 N. Y., 220; 2 Wharton, Contracts, sec. 842.)

The employes have an equity in the contract or fund representing it. (1 Pomeroy, Equity Jurisprudence [2d ed.], sec. 59; *Daggett v. Rankin*, 31 Cal., 321; *Loney v. Courtnay*, 24 Neb., 584; *Neeson v. Clarkson*, 4 Hare [Eng.], 97;

*Norris v. Caledonian Ins. Co.,* L. R., 8 Eq. [Eng.], 127;
*Gill v. Downing,* L. R., 17 Eq. [Eng.], 316.)

Similar equities are recognized and enforced by positive
statutes. (Comp. Stats., ch. 54, art. 2; *Wilson v. Taylor,* 8
So. Rep. [Ala.], 149.)

Similar equities have been recognized and enforced by
courts of chancery. (*Meyer v. Johnston,* 53 Ala., 237; *Fos-
dick v. Schall,* 99 U. S., 235; *Miltenberger v. Logansport
R. Co.,* 106 U. S., 286; *Union Trust Co. v. Souther,* 107 U.
S., 591; *Burnham v. Bowen,* 111 U. S., 776; *Union Trust
Co. v. Illinois M. R. Co.,* 117 U. S., 434; *Dow v. Memphis
& L. R. R. Co.,* 124 U. S., 652; *Union Trust Co. v. Mor-
rison,* 125 U. S., 612; *Farmers Loan & Trust Co. v. Mis-
souri I. & N. R. Co.,* 21 Fed. Rep., 265; *Reyburn v. Con-
sumers Gas, Fuel & Light Co.,* 29 Fed. Rep., 562; *Tooth
v. Hallett,* L. R., 4 Ch. App. [Eng.], 242; *Bristow v.
Whitmore,* 9 H. L. Cas. [Eng.], 392.)

Where money coming due on a contract is assigned, the
assignee's claim is subject to all the conditions and terms
of the contract. (*Tooth v. Hallett,* L. R., 4 Ch. App. [Eng.],
242; *Bristow v. Whitmore,* 9 H. L. Cas. [Eng.], 391.)

The nature of the contract in question is such that it
was not assignable. (Pollock, Contracts [4th ed.], 425;
*Arkansas Valley Smelting Co. v. Belden Mining Co.,* 127 U.
S., 379.) If there was an assignment of future earnings
of the contract, it was void. (Comp. Stats., ch. 32, secs. 11,
17; Wait, Fraudulent Conveyances, sec. 379; *Booker v.
Jones,* 55 Ala., 266; *Cole v. Kerr,* 19 Neb., 557; *Moody
v. Wright,* 13 Met. [Mass.], 17; *Seymour v. Delancy,* 3
Cow. [N. Y.], 445; *Pigg v. Corder,* 12 Leigh [Va.], 69.)

*John M. Thurston* and *W. R. Kelly,* for Union Pacific
Railway Company, appellant.

*Lake, Hamilton & Maxwell,* for appellees:

The employes had no contractual relations, expressed or

implied, with the railway company, and can have no claim against it for their labor. The contract was signed alone by the railway company and S. F. Wells. (1 Jones, Liens, sec. 50; *Hoyt v. Story*, 3 Barb. [N. Y.], 262; *Wright v. Ellison*, 1 Wall. [U. S.], 16; *Dillon v. Barnard*, 21 Wall. [U. S.], 430; *McCloskey v. City and County of San Francisco*, 66 Cal., 104.)

The appellees, Douglas County Bank, Joseph R. Clarkson and C. S. Parrotte, are entitled as creditors of S. F. Wells to receive the money in the hands of the railway company acknowledged by it to be due and owing under the transfer contract. (Pomeroy, Remedies & Remedial Rights, 184; *Field v. Mayor of City of New York*, 6 N. Y., 179; Lawson, Rights, Remedies & Practice, sec. 2652; *Wade v. Bessey*, 76 Me., 413; *Hawley v. Bristol*, 39 Conn., 27; *Augur v. New York Belting & Packing Co.*, 39 Conn., 536; *Payne v. Mayor of Mobile*, 4 Ala., 333; *Bradley v. Root*, 5 Paige Ch. [N. Y.], 632; *Bower v. Hadden Blue Stone Co.*, 30 N. J. Eq., 171; *Nimocks v. Woody*, 97 N. Car., 1; *Bank of Commerce v. Bogy*, 44 Mo., 13; *Wheatley v. Strobe*, 12 Cal., 92; *Fonner v. Smith*, 31 Neb., 107; *Ruple v. Bindley*, 91 Pa. St., 296; *McWilliams v. Webb*, 32 Ia., 577; *Moore v. Lowrey*, 25 Ia., 336.)

The appellees are not liable to the employes for any unpaid balance due the latter for labor performed which was necessary to carry out the provisions of the contract. (*Whitney v. Cooper*, 1 Hill [N. Y.], 632; *Miller v. Franklin*, 20 Wend. [N. Y.], 629; *Chester v. Bank of Kingston*, 16 N. Y., 343; *Champlin v. Butler*, 18 Johns. [N. Y.], 169; *Marks v. Pell*, 1 Johns. Ch. [N. Y.], 594; *James v. Johnson*, 6 Johns. Ch. [N. Y.], 429; *Hodges v. Tennessee Marine & Fire Ins. Co.*, 8 N. Y., 416; *Hahn v. Doolittle*, 18 Wis., 206; *Eiseman v. Gallagher*, 24 Neb., 81; *Newman v. Edwards*, 22 Neb., 248; *Omaha Book Co. v. Sutherland*, 10 Neb., 334.)

IRVINE, C.

In 1887 Mrs. S. F. Wells entered into a contract with the Union Pacific Railway company, whereby Mrs. Wells undertook to load, unload, and transfer from car to car all freight necessary to be so transferred, to and from the cars of the Union Pacific Railway and its connecting lines at Council Bluffs. Mrs. Wells was required to furnish all employes necessary for the purpose, and the railway company provided certain facilities in the way of platforms, tools, and switching. The compensation for this work was at a specified rate per ton and was payable monthly, not later than the tenth day of each month for the month preceding. While the contract was signed by Mrs. S. F. Wells and the business was carried on in her name, it was in fact conducted by her husband, Charles Wells, and in all transactions connected with this business which we shall have occasion to refer to Charles Wells was the person who actually performed all acts in the Wells' interest, but they were performed in the name of S. F. Wells. No question arises as to Charles Wells' authority to so represent Mrs. Wells. On the 10th of August, 1888, Wells requiring money to carry on the business, C. S. Parrotte and Joseph R. Clarkson made their joint note to the Douglas County Bank for $3,600, payable in thirty days. The proceeds of this note were passed to Mrs. Wells' credit. At the same time there was indorsed on the contract referred to the following:

"AUG. 10, 1888.

"For value received, I hereby sell, assign, and transfer to Joseph R. Clarkson all my right, title, and interest in and to the above contract, hereby authorizing and empowering him to do any and all manner of things in the premises as I myself could.          S. F. WELLS,

"By C. WELLS, *Att'y in Fact.*

"Witness: SAMUEL C. SAMPLE.

"S. F. WELLS."

Clarkson, in his turn, again indorsed the contract as follows:

"Aug. 10, 1888.

"I hereby assign, sell, and transfer to the Douglas County Bank above contract as collateral security for loan this day made.                    Joseph R. Clarkson.

"Witness:

"Louis Neese."

The contract bearing these indorsements was then delivered to Parrotte, who was president of the bank. The note referred to was undoubtedly executed by Parrotte and Clarkson solely for the accommodation of Wells, and the object of the assignment of the contract to Clarkson was to secure him and Parrotte in the matter, while the assignment from Clarkson to the bank was, as stated, for the purpose of affording collateral security to the note. On the 10th of September, 1888, a check was drawn by the Union Pacific in favor of the Douglas County Bank for the amount then due Mrs. Wells under the contract. With the sum realized the note referred to was paid and the remainder of the check passed to Mrs. Wells' credit. Immediately upon the payment of this note, and the same day, Wells besought Parrotte and Clarkson to renew the transaction for another month. This they did, making a new note for $3,600, and delivering the contract with the same indorsements to Parrotte. The evidence is very indistinct as to the details of this occurrence. The business was conducted chiefly by Wells and Parrotte. Wells' testimony was not procurable, or at least was not procured at the trial, and the evidence shows that Parrotte's mental condition was then such that he could not testify. Sufficient appears, however, to indicate that there was an intention, whether or not it was well executed, to deposit the contract primarily as security to Parrotte and to Clarkson on the note, and secondarily as security to the bank against overdrafts which, as a matter of fact, accrued during the currency of the note to the amount

of $1,600.    About the time of the second loan the parties
to the contract, acting under a provision thereof, arranged
for its termination at the end of thirty days, to-wit, Octo-
ber 10th.    When that day came Wells did not appear and
his employes were not paid.    The employes, through a
committee appointed for the purpose, made a demand upon
the railway company that they should be secured the wages
earned by them out of the moneys then owing by the rail-
way company under the contract.    In the meantime Mrs.
Wells had executed an order upon the local treasurer di-
recting the payment of the money to the Douglas County
Bank.    In this state of affairs the Union Pacific Railway
Company filed its petition in the district court of Douglas
county in the nature of a bill of interpleader, making de-
fendants the Douglas County Bank, Clarkson, Mrs. Wells,
and Charles Wells, and the employes referred to, one hun-
dred and thirteen in number.    These employes have joined
in the proceedings throughout and will be hereafter referred
to simply as the "employes."    The petition set up the facts
practically as above stated, averring that there was due
under the contract the sum of $5,119.23; that Clarkson
and the bank were claiming said sum on one side and that
some of the employes had already begun suit to recover
their money and garnished the railway company, and that
the other employes were about to do so.    The prayer was
that the railway company might be permitted to deposit
said sum in court; that the defendants be required to inter-
plead as to their rights, and that they be enjoined from
prosecuting any other actions against the railway company
pending the determination of their rights in this suit.    The
bank, Clarkson, and Mrs. Wells answered, setting up the
claims of Clarkson and the bank by virtue of the facts
above stated.    The employes also answered asserting a
claim based on the alleged invalidity of the assignments of
the contract, at least so far as they would operate to deprive
the employes of their wages out of the fund.    Some facts

occurred subsequently to the institution of the suit which should be stated. The note of September 10th was several times renewed and finally paid by Clarkson. The overdraft referred to was never paid by Mrs. Wells, but Parrotte seems to have regarded himself as surety therefor, and when his interest in the bank was disposed of he gave his own note to cover certain indebtedness to the bank including this overdraft. This note he afterwards paid. The employes, not receiving their wages promptly, threatened to precipitate a strike of all the railway's employes, and in order to avoid this the railway company made an arrangement with Mr. Richard S. Carrier, whereby the latter advanced to the employes the amounts due them respectively and took from them an instrument in the form of a several promissory note dated October 20, 1888, and payable within sixty days after date, and also containing an assignment to Carrier of the employes' claims against Mrs. Wells and her assigns. The Union Pacific Railway Company at the same time executed a written guaranty to Carrier of the repayment of the sums so lent by him. Carrier has not been repaid either by the employes or the railway company. He was by the district court permitted to intervene and set up his claim under the assignment from the employes. The railway company sought to set up the same facts by supplemental petition; but leave to do so was refused, and we think properly. It had not fulfilled its guaranty, and could not assert any right to the fund thereunder even if its position as plaintiff in a bill of interpleader did not operate to prevent its assertion of a right in itself to the fund. (Story, Equity Jurisprudence, sec. 807.) There was no dispute as to the material facts. The district court found in favor of Clarkson and the bank and entered judgment in favor of the bank for the sum in dispute, in trust, however, for the payment therefrom of the costs and also of $3,600 and interest to Clarkson. The Union Pacific Railway Company and the employes appeal from this de-

cree.   We cannot see in what respect the Union Pacific can complain thereof.   By filing its bill of interpleader it placed itself in the position of å stakeholder, and the decree merely provides for the distribution of the fund paid by the railway company into court, and does not subject the 'railway company either to costs or to any other burden. As we have already said, we think the court was right in refusing to allow the railway company to assert a claim in its own right to the fund by reason of its guarantying the Carrier loan; so that if the railway company were the only appellant the decree could not be disturbed.   We shall consider the case, therefore, solely from the standpoint of the employes and of Carrier, whose rights depend upon theirs.

In considering the rights of the parties the first question which presents itself is the nature of the assignments of Mrs. Wells' contract.   Was the assignment to Clarkson intended to pass, to him only the money earned or to be earned under the contract, or was it intended to transfer the benefits of the contract *cum onere*—that is, to substitute Clarkson in place of Mrs. Wells both as to benefits and obligations?   The language of the assignment goes far to compel the latter construction.   When it is contemplated to assign merely money accruing by virtue of a contract, language confining the assignment to that purpose is naturally used.   It is hard to conceive that with such an object in view Mrs. Wells should express herself as assigning her right, title, and interest " in and to the above contract," and then expressly authorize and empower the assignee " to do any and all manner of things in the premises" as she herself could.   If the language of the assignment clause would, standing alone, permit the construction of assigning the benefits only, the language following would necessarily extend the meaning.   This language was inserted in the assignment for a purpose, and we are bound to give it effect if possible.   Its only purpose, so far as we can discover, must have been to authorize Clarkson to perform

the obligations imposed by the contract upon Mrs. Wells. When we look at the assignment in the light of the circumstances this construction is reinforced. The assignment was made at a time when nothing was due Mrs. Wells, a fact which the evidence shows was known to Clarkson. It is true that payment had not been made for the work done within the past ten days, but it would not become due for a month and would be wholly inadequate to secure the debt, the securing of which was the plain object of the assignment. In order to make the assignment adequate security, it became necessary that the work required of Mrs. Wells by the contract should be performed throughout the month. Clarkson's security lay not in what had already been done, but in what was to be done in the future. Had Wells abandoned the work the day the assignment was made, Clarkson would have derived no benefit thereunder unless he were permitted to take up and carry on the work. It is true that a contract of such a nature is probably not assignable in the sense that Mrs. Wells might, without the consent of the railway company, substitute another to perform her duties, but this might be done with the consent of the company, and Clarkson may have had some assurance that in the event of Mrs. Wells' failure to perform the work his rights would be recognized, or at least he might be willing to assume this risk. We do not mean that the intention of the parties was by the assignment *eo instante* to impose upon Clarkson Mrs. Wells' obligations, but we do think that the object of the assignment was to secure Clarkson, not merely by a present appropriation of moneys to be earned in the future by Mrs. Wells, but by authorizing him to see that the moneys were earned and to avail himself of the profits. We do not think that the nature of Clarkson's assignment to the bank is very material to this discussion. It would seem from the evidence that Clarkson became subrogated or rather reinvested with the security afforded, by paying the note, and

that Parrotte became subrogated to the surplus by discharg-
ing the overdraft, provided the assignment was at all op-
erative. But we cannot see that either the bank or Parrotte
could under their assignment claim higher rights than
Clarkson possessed. It was only the rights passing to
Clarkson under the contract that were by him transferred
to the bank. It follows, from the construction we have
given this assignment, that Clarkson could not assume the
benefits of the contract without assuming its burdens. We
do not here determine that by the assignment he *ipso facto*
rendered himself liable personally for the wages of the
employes. What we do hold is that under such an as-
signment he cannot be permitted in equity to avail himself
of the benefits of the contract without discharging its ob-
ligations, and that in a case where he seeks to assert his
right to the benefits as against another party in whose fa-
vor obligations have arisen, he must perform those obliga-
tions before he will be permitted to receive the benefits.

With this construction fixed upon the assignment of the
contract its application to the present controversy is to be
determined. This case was instituted by a bill of inter-
pleader. The object of such a bill and the foundation of
such a proceeding is to relieve one, who has in his posses-
sion property or funds claimed by different persons, from
vexatious litigation and the peril of being compelled to a
double satisfaction. (Story, Equity Jurisprudence, sec. 806.)
In order to sustain such a proceeding the plaintiff must
show that at least two claimants have colorable demands
upon the fund. It may be doubted whether the plaintiff's
bill was sufficient for this purpose, because it might well
have been contended that the employes had no colorable
claim against the Union Pacific and could only acquire
such claim by garnishment proceedings for the purpose of
reaching the fund either as the property of Mrs. Wells or
of her assignees, and not adversely to either, but these
were questions to be determined before the court ordered

an interpleader. It does not appear that the court made any such order, but the parties by their voluntary act supplied the place of the order. Without awaiting the order to interplead they answered the bill and set up their claims for adjudication against one another. So that, whether or not the bill of interpleader by the plaintiff was well founded, the defendants, having yielded thereto, and elected to submit their claims to the fund for adjudication, the case must be treated as properly in court on the interpleader. (11 Am. & Eng. Ency. of Law, 504, and cases cited.) We must therefore treat the fund as properly in court for distribution according to the equities of the respective claimants. If the assignment to Clarkson had been entirely inoperative, Mrs. Wells' employes might have proceeded at law against her and by appropriate process of garnishment obtained a legal claim upon the fund in dispute. If, on the other hand, the assignment became operative, and is to be construed as we have construed it, they might have proceeded against Clarkson and by the same process obtained a similar claim. The bill was founded upon the danger of subjecting the Union Pacific to a multiplicity of suits because of such proceedings, and it was certainly beyond the power of the Union Pacific, by adopting this procedure and paying the money into court, to deprive the employes of the effect of the remedies which were open to them before the suit was brought but which the bringing of the suit prevented them from pursuing. The fund being in court for the purpose of protecting the Union Pacific against such proceedings, and the employes therefore prevented from so proceeding, their equities should be considered in the same light as if such steps had actually been taken. In other words, the employes cannot be deprived of any claim which they might have established upon the fund because an innocent third person has been permitted to deprive them of the right to enforce such claim by the ordinary methods simply for the protection of

that third person and not because of any illegality in such proposed proceedings.

The foregoing discussion is, we think, sufficient to establish the propositions which govern the determination of the case.    These are:

1. The assignment either became operative or it did not. If it did not, neither Clarkson nor the bank had any claim to the funds.

2. If it did become operative, then Clarkson cannot in equity be permitted to receive the advantages of the contract without submitting to its obligations.

3. As between Mrs. Wells and the employes, the employes might have by legal proceeding enforced their claim for wages out of the fund.

4. Under the construction given the contract, if Clarkson took advantage of the assignment, the employes might have similarly enforced their claims against him out of the fund.

5. The institution of this action by the Union Pacific and the payment of the money into court deprived the employes of the ordinary remedies for enforcing such claims.

6. All parties having yielded to the correctness of this proceeding, the fund in court should be distributed in the same manner in which it would have been distributed if by the institution of the suit the ordinary legal proceedings had not been prevented.

7. Consequently, to the extent of the fund in court, the employes should be first satisfied their demands.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.