### KIRBY LUMBER CO. v. R. L. LUMBER CO.
### (No. 1304.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 7, 1926.)

**I. Appeal and error ⟐1003—Where verdict against weight of evidence, judgment reversed.**

On finding that verdict is so against the overwhelming weight of the evidence as to be manifestly wrong, judgment will be reversed.

**2. Assignments ⟐31—Contract by defendants with purchaser from plaintiff held to make them assignees of purchaser under plaintiff's contract.**

Where plaintiff's contract provided that it should be binding on assignees of purchaser, contract by defendants with purchaser with knowledge of plaintiff's contract providing for

substantially the same terms and conditions as plaintiff's contract, and taking over all purchaser's right, title, and interest therein, made defendants assignees of the purchaser.

**3. Assignments ⟐109—Agreement by assignee to discharge obligations of assignor implied, where assignee received benefits of assignor's contract.**

Where purchaser from plaintiff assigned to defendants all his rights and interest in lumber contract with plaintiff, and defendants entered into possession and removed timber on same terms as their assignor could have done, an agreement by defendants to discharge all obligations of their assignor to the plaintiff is implied, though defendants did not expressly assume such obligations.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Suit by the Kirby Lumber Company against the R. L. Lumber Company and the Heyman-Pate Lumber Company. Judgment directed against defendant last named, and from a judgment in favor of defendant first named plaintiff appeals. Directed judgment affirmed, and judgment for the R. L. Lumber Company reversed and rendered in favor of plaintiff.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

J. E. Wheat, of Woodville, for appellee.

O'QUINN, J. This is a suit by the Kirby Lumber Company against the R. L. Lumber Company and the Heyman-Pate Lumber Company to recover such sum as might be due the plaintiff by said defendants on a certain timber contract. The plaintiff, Kirby Lumber Company, alleged that on the 20th day of February, 1923, it entered into a contract in writing with one J. E. Pate to sell him all the merchantable pine timber measuring 10 inches and upwards in diameter at the stump at the time of cutting upon certain described tracts of land, attaching a copy of the contract to its petition, which contract showed in detail the provisions for the cutting of the timber and how payments for same were to be made. Plaintiff further alleged that said contract provided that it should be binding upon the assigns of each of the parties; that said Pate assigned the contract to the defendants, who entered upon the land and cut and removed the timber therefrom; and that there was due and unpaid on said contract the sum of $66,078.26, for which judgment was asked. Plaintiff also alleged that in negotiating the purchase of the timber from plaintiff, Pate, while ostensibly acting for himself, was, in fact, the agent of and acting for said defendants, by reason of which they were undisclosed principals, and as such liable, and prayed judgment accordingly.

The defendants answered by general demurrer, numerous special exceptions, general

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 17, 1926.

denial, and specially under oath denied the agency of Pate for them in the purchase of the timber from plaintiff.

At the conclusion of the evidence appellant requested an instructed verdict against both defendants, which was denied.

While both defendants made answer, as above indicated, the defendant Heyman-Pate Lumber Company offered no defense, and judgment was instructed and entered against it. The case as to the defendant R. L. Lumber Company was tried to a jury upon the one special issue as to whether Pate, when he entered into the contract for the purchase of the timber with the Kirby Lumber Company, acted for and in behalf of said R. L. Lumber Company. The jury returned a finding in favor of said defendant, and judgment was accordingly entered. Motion for a new trial was overruled, and the case is before us for review.

The timber contract between the Kirby Lumber Company and Pate, upon which appellant's suit is based, omitting heading and acknowledgments, is as follows:

"This memorandum of an agreement entered into by and between the Kirby Lumber Company, a Texas corporation, hereinafter called the seller, and J. E. Pate, of Tyler county, Tex., hereinafter called the purchaser, witnesseth:

"I. The seller has sold to the purchaser, and the purchaser has bought from the seller, all of the merchantable pine timber ten (10) inches and upwards in diameter at the stump at the time of cutting, upon all those certain lots, tracts and parcels of land lying and being situated in Tyler county, Tex., and described in Exhibit A, which is hereto attached and made a part hereof, and like intent and effect as if fully copied herein.

"II. The consideration paid and to be paid by the purchaser to the seller for the timber is the sum of one hundred and four thousand eight hundred and twenty-nine and 59/100 dollars ($104,829.59). Of such consideration the purchaser has contemporaneously with the execution of these presents, paid to seller the sum of five thousand dollars ($5,000) in cash, and the balance of the consideration the purchaser hereby agrees to pay in monthly installments of five thousand dollars ($5,000) each, the first of such installments to be paid on the 1st day of April, 1923, and a like sum to be paid on the first day of each month thereafter, until the full amount of said consideration is paid, it being understood that the last payment shall be for such less amount than five thousand dollars ($5,000) as is necessary to pay in full the total consideration.

"III. It is understood and agreed by and between the purchaser and the seller that this sale is made upon the following express conditions, to-wit:

"(a) That none of said timber shall be cut prior to the 1st day of March, 1923.

"(b) That the purchaser shall not cut exceeding four hundred thousand (400,000) feet timber during any calendar month, and that in the event any excess over said amount is cut during any calendar month, such excess shall be paid for not later than the fifth day of the following month, at the rate of eleven dollars ($11.00) per thousand feet, log, scale, the payment for such excess to be credited upon the deferred installments in the inverse order of their maturity.

"(c) That the purchaser shall furnish to the seller weekly scale sheets showing the quantity of timber cut during each week.

"(d) That the purchaser shall cut the said timber in a uniform manner and cut clean as he goes and shall not be permitted to enter in advance of regular logging operations to cut piling or other special grades or classes of timber.

"IV. In the event of default on the part of the purchaser in respect to any of the payments required to be made to the seller, or in respect to any of the conditions set forth in the next preceding hereof, the purchaser shall have no right after any such default, to cut or remove any of the timber remaining, and the seller shall be entitled to prevent the purchaser from cutting or removing any timber remaining, and all rights of the purchaser to cut or remove any timber shall cease and determine, and all payments theretofore made to the seller shall be forfeited to the seller as agreed and liquidated damages.

"V. The purchaser shall have two years from the date of this agreement within which to cut and remove the said timber, and all timber not cut and removed at the expiration of said two years' period, shall revert to the seller and the purchaser shall have no right after the expiration of said period to cut or remove any timber remaining.

"VI. In the event market conditions are such that the purchaser is unable to profitably operate his mill, thereby necessitating the mill being closed down, the monthly payments hereinbefore required to be made shall be extended for such period of time as the said mills are closed down, but not exceeding in any event six (6) month, provided, however, the purchaser shall pay interest at the rate of six (6) per cent. per annum, during such period upon the unpaid portion of the purchase price of said timber, and the cutting period of two years for the removal of the timber shall upon the payment of such interest be automatically extended for a period equal to that during which the said mill was so shut down.

"VII. This agreement shall be binding upon the successors and assigns of the seller, and upon the heirs, executors, administrators and assigns of the purchaser, and it supersedes the tentative agreement between the parties of date January 4, 1923.

"In witness whereof the Kirby Lumber Company has caused these presents to be executed by its proper corporate officers hereunto duly authorized and the said J. E. Pate has executed these presents on this the 20th day of February, A. D. 1923. [Seal.] Kirby Lumber Company, by J. W. Link [Signed] Executive Vice President. [Signed] J. E. Pate.

"Attest: [Signed] R. F. Ford, Secretary."

The contract between Pate and the Heyman-Pate Lumber Company and the R. L. Lumber Company reads:

"State of Texas, County of Tyler.

"This memorandum of an agreement made and entered into by and between J. E. Pate of

the county of Tyler and state of Texas, and the R. L. Lumber Company and the Heyman-Pate Lumber Company, Texas corporations, witnesseth:

"I. J. E. Pate having purchased all of the merchantable pine timber 10 inches and upwards in diameter at the stump at the time of cutting upon three certain tracts or parcels of land lying and being situated in Tyler county, Tex., and being fully described in a contract dated February 20, 1923, by and between the said J. E. Pate and the Kirby Lumber Company hereby assigns and transfers unto the said R. L. Lumber Company and the Heyman-Pate Lumber Company all of his right, title and interest in and to said timber under and by virtue of said contract for and in consideration of the sum of $5,000.00 in cash and the further consideration hereinafter stated.

"II. The R. L. Lumber Company and the Heyman-Pate Lumber Company shall have the right to enter upon said land and cut and remove said timber at any and all times from March 1, 1923, to February 20, A. D. 1925; and said companies shall pay to the said J. E. Pate at the end of each month the sum of $12.50 per thousand feet for all of the timber so cut and removed during said month not exceeding four hundred thousand feet and the sum of $11.00 per thousand feet for all timber cut and removed in excess of four hundred thousand feet.

III. It is understood and agreed by and between all parties hereto that the said R. L. Lumber Company and the Heyman-Pate Lumber Company shall each be bound and obligated only to pay to the said J. E. Pate at the end of each month for the timber delivered to its respective mill during said month at the rate of $12.50 per thousand feet for the first two hundred thousand feet and $11.00 per thousand feet for the excess. It is further agreed that said timber shall be jointly cut, hauled and loaded by said companies and shipped to the respective mills as follows:

"Four-ninths of said timber shall be shipped to the Heyman-Pate Lumber Company and five-ninths to the R. L. Lumber Company, provided, however, that, in the event that at any time the timber so shipped shall exceed the capacity of either of said mills, then and in that event it shall only be necessary to ship said mill the amount it requires to run full time, and the remainder may be shipped to the other mill if it so desires.

"IV. It is further understood and agreed that the companies shall bear equally the expense of constructing and maintaining loading docks, switches, residences, and such other improvements as may be necessary or desirable for use in the logging operation in cutting and removing said timber from said land; but each company shall pay the cost of the cutting, hauling and shipping of said logs to its mill.

"V. It is further understood and agreed that a scaler shall be employed by the parties hereto, who shall scale said timber at the skidway and superintend and direct the loading and shipping of the same to the respective mills.

"VI. It is further understood and agreed that the R. L. Lumber Company and the Heyman-Pate Lumber Company or either of them may at its option terminate this contract at any time, and in which event it shall pay to the said J. E. Pate the sum of $11.00 per thousand feet for all of the timber received by it under this contract, crediting thereon the $2,500.00 paid by it on even date herewith and the further payments made hereunder; and in the event the timber so received by said mills is not sufficient at $11.-00 per thousand feet to equal the full amount to said company as shall be necessary to make up such deficience. And in the event that a total sum of one hundred four thousand eight hundred twenty nine and 59/100 dollars ($104,829.-59) shall have been paid by the R. L. Lumber Company and the Heyman-Pate Lumber Company to the said J. E. Pate before all of said timber is cut and removed from said land, then said companies shall have the right to cut, fell and remove all of said remaining timber in equal proportions without any further payment.

"In witness whereof the said J. E. Pate has executed this instrument and the R. L. Lumber Company and the Heyman-Pate Lumber Company, corporations have caused the same to be executed by its proper officers hereunto fully authorized on this the 22d day of February, A. D. 1923. J. E. Pate. R. L. Lumber Company, by J. T. Lindsey, President. Heyman-Pate Lumber Company, by C. W. Richards, Vice President.

"Attest: J. E. Pate, Secretary.
         "H. G. Burlew, Secretary."

Appellant urges: (1) That the undisputed evidence shows that appellee R. L. Lumber Company was an undisclosed principal of Pate; that Pate was merely acting for the R. L. Lumber Company in making the contract with appellant, Kirby Lumber Company, for the purchase of the timber, and, therefore, appellee R. L. Lumber Company was liable on said contract; (2) that the verdict of the jury finding that appellee R. L. Lumber Company was not an undisclosed principal of Pate in the making of the timber purchase contract with appellant, Kirby Lumber Company, is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong; (3) that the agreement between Pate and the Kirby Lumber Company provides that same shall be binding upon the successors and assigns of the seller (Kirby Lumber Company), and upon the heirs, executors, administrators, and assigns of the purchaser (Pate and his heirs, executors, administrators, and assigns), and that, as Pate assigned the contract to the defendants (Heyman-Pate Lumber Company and R. L. Lumber Company), both of said defendants are liable for the amount due thereon, and that the court erred in refusing to so instruct the jury.

[1] Without stating the evidence or discussing same, we conclude, after a careful consideration of the whole record, that we cannot say there is no evidence to support the jury's finding, but we do say that the verdict is so against the overwhelming weight of the evidence as to be manifestly wrong, and should not stand. This would necessitate a reversal of the judgment.

[2] We come now to consider appellant's insistence that the court should have instructed a verdict in its favor, for the reason that

appellee R. L. Lumber Company was an assignee of Pate in the contract with appellant for the purchase of the timber, and therefore, liable on the contract. We have decided that this contention should be sustained. It is manifest that the parties contemplated that the contract would be assigned, for they provided in the contract that it should be binding upon the successors of the seller (appellant) and upon the assignees of the purchaser (Pate). This contract and all of its terms were known to the Heyman-Pate Lumber Company and to the R. L. Lumber Company when they took over, by assignment, the contract from Pate, for in their contract with Pate they refer to this contract, naming the parties thereto and the date of same. They knew of the terms and conditions of the cutting of the timber and the manner of paying for same, and in their contract with Pate provided for their paying to Pate on the same terms, at the same times, and in the same manner. Pate received no profit from his contract with appellant, but assigned the contract to the defendants upon the very identical terms and provisions as to their paying to him as he was obligated to pay to appellant. As further evidence that they intended to and were taking over Pate's entire contract, together with all its benefits, their contract with him provided that, if they paid $104,829.59 (the amount Pate was to pay the Kirby Lumber Company for the timber) before all the timber conveyed by the Kirby Lumber Company to Pate was cut and removed, then and in that event they, the defendants, were to have the right to cut and remove the remaining timber in equal proportions without any further payment. This margin or profit was to be theirs, not Pate's. While it is true that the contract between Pate and the defendants provided for the payments for timber cut to be made by them to Pate, still they had, by their contract with Pate, taken over "all his right, title, and interest in and to said timber under and by virtue of said contract" with appellant. No rights in his contract with the Kirby Lumber Company of any character were reserved by Pate, but they, all and singular, passed to defendants. The fact that in their contract with Pate they provided for the payments to be made to Pate did not change or make any the less complete their taking by assignment of the Pate contract, and the rule is well settled that an assignee of a contract cannot accept and receive the benefits of the contract without also assuming its burdens. If the defendants had the right (which they certainly had) to demand all of the benefits under the contract that Pate was entitled to enjoy, then they were also obligated to perform all the obligations that Pate owed to appellant in the purchase of those rights. They took by assignment the contract cum onere. Railway Co. v. Douglas County Bank, 42 Neb. 469, 60 N. W. 886; Atlantic Railway Co. v. Atlantic Co., 147 N. C. 368, 61 S. E. 185, 125 Am. St. Rep. 550, 562, 563, 15 Ann. Cas. 363; Forrest v. Durnell, 86 Tex. 647, 26 S. W. 481; Landa v. Lattin, 19 Tex. Civ. App. 246, 46 S. W. 48, 51; 5 C. J. 977.

[3] While the contract between Pate and the Heyman-Pate Lumber Company and the R. L. Lumber Company, wherein Pate assigned to said companies all his right and interest in and to the contract between him and appellant, did not in terms obligate said companies to assume and discharge the obligations of Pate stated in his contract with appellant, yet, they having contracted with Pate for all of his rights and interest in said contract, and having gone into possession of the premises, cut and removed timber as fully as Pate himself could have done, and had all the benefits of Pate's said contract, the law implies an agreement on their part to assume and discharge the obligations of Pate to appellant under said assigned contract. That is the legal effect of their contract with Pate and their going into possession of and enjoying the benefits of the assigned contract. Jackson v. Knight (Tex. Civ. App.) 194 S. W. 844 (writ refused). Appellee cannot, in equity, be permitted to receive the benefits and advantages of the Kirby Lumber Company contract with Pate without submitting to its obligations. In other words, when by the assignment it acquired the right to enforce against the Kirby Lumber Company performance of the contract, it also assumed the burdens imposed by the contract.

At a former day of this term we announced our decision that this cause should be reversed and remanded for a new trial as to the defendant R. L. Lumber Company, but, after a more thorough examination of the questions involved, we have concluded that the court below erred in refusing appellant's motion for an instructed verdict against both defendants, and that the judgment in favor of appellee R. L. Lumber Company should be reversed and here rendered for appellant. Accordingly, that part of the judgment of the trial court awarding judgment in favor of appellant against the defendant Heyman-Pate Lumber Company is affirmed, and that part rendering judgment against appellant in favor of the defendant R. L. Lumber Company, appellee, is reversed, and judgment here rendered for appellant against said appellee in the sum of $66,078.26, that being the amount the court below found was still due appellant under the Pate contract.

Affirmed in part, and in part reversed and rendered.