Sam McKINNIE, Appellant,

v.

C. W. MILFORD, Appellee.

No. 1326.

Court of Civil Appeals of Texas, Tyler.

April 10, 1980.

William D. Guidry, Benchoff & Guidry, Nacogdoches, for appellant.

Bill Griffin, Jr., Center, for appellee.

MOORE, Justice.

Appellee, C. W. Milford, instituted this suit against Norman Stewart and appellant, Sam McKinnie, alleging that he had theretofore sold a registered, quarterhorse stud to Norman Stewart, who agreed in writing to allow Milford to use the horse for two breedings per year as long as the horse lived. He alleged that although Stewart originally permitted him to use the horse for breeding purposes, Stewart subsequently refused him the use of the horse. He prayed for damages against Stewart for the breach of the contract. Milford further alleged that Stewart sold the horse to McKinnie, who purchased the horse with knowledge of Milford's contractual right to the use of the horse. He alleged that McKinnie likewise denied him the right of two breedings per year and sought a recovery of damages against McKinnie. Both Stewart and McKinnie answered with a general denial and denied liability on the ground that Milford had breached the contract by failing and refusing to pay boarding and veterinary bills owed Stewart during the time Stewart owned the horse. Trial was before the court and a jury. The jury found as follows: (1) $2,500 would compensate Milford for damages sustained as a result of McKinnie's refusal to allow Milford to breed two mares per year; (2) $500 would compensate Milford for damages sustained as a result of Stewart's refusal to allow Milford two breedings per year; and (3) that Milford did not fail or refuse to pay for board and veterinary serv-ices provided by Stewart. Pursuant to the jury's verdict, the trial court entered judgment awarding Milford a recovery in the amount of $500 against Stewart and $2,500 against McKinnie. McKinnie filed a motion for judgment non obstante veredicto and a motion for new trial. After the motions were overruled, McKinnie perfected this appeal. Stewart did not appeal.

We affirm.

The record reveals that in March 1969, Milford sold the registered quarterhorse stud known as Hired Chico to Norman Stewart. At that time, Milford and Stewart entered into a written agreement. Omitting the formal parts, the agreement reads as follows:

> I, C. W. Milford, reserve 2 breedings each year on Hired Chico registration # 403692 for the life of this stud horse regardless to whom the horse may be sold to, this agreement will always stand from sale of listed stud horse. I understand that C. W. Milford will bear any board bill or Vet. bill.

> It is further agreed that the described breedings will be two (2) stud fees per year no matter of price.

The agreement was filed with the County Court Clerk of Shelby County, Texas. After allowing several breedings to take place, Stewart denied Milford two of his breedings. Subsequently, Stewart sold the horse to McKinnie, who was aware of the contract between Stewart and Milford. He admitted that he had read the contract and had understood it. After McKinnie purchased the horse, he too denied Milford any breedings as provided for in the agreement. Both Stewart and McKinnie testified that the reason that they refused to allow Milford any further breeding rights was because Milford had not paid Stewart for his veterinary and board bills. The jury, however, found the Milford did not owe any veterinary or board bills, and McKinnie does not complain of this finding upon appeal.

In his first point of error, McKinnie complains that the trial court erred in render-

ing judgment against him because Milford failed to plead a cause of action against him. Specifically, appellant McKinnie contends that the pleadings did not state a cause of action against him because the sole cause of action pleaded was for breach of contract between Milford and Stewart. McKinnie asserts that he was not a party to the contract between Milford and Stewart, and since there are no allegations that a relationship existed which might bind him to the contract, the petition fails to state a cause of action against him. Milford in his first amended petition, stated the following: (1) the substance of the contract; (2) that Stewart sold the horse to McKinnie, who had both actual and constructive knowledge of the previous agreement before he bought the horse; (3) that both Stewart and McKinnie refused to allow him breeding rights as reserved under the original contract; and (4) a prayer for damages. Neither McKinnie nor Stewart filed any special exception (relevant to the appeal) to the petition.

■ Our rules provide that pleadings shall consist of a statement in plain and concise language of the plaintiff's cause of action. Tex.R.Civ.P. 45. The petition which sets forth a claim for relief need only give a short statement of the cause of action sufficient to give notice of the claim involved. Tex.R.Civ.P. 47. Pleadings are to be liberally construed as a whole. When the rights are alleged to arise out of contract, the plaintiff must set forth circumstances to show a contractual obligation. However, absent a special exception, an allegation of the legal conclusion that the defendant contracted to do or to refrain from doing a given act would appear to meet the requirement in alleging a cause of action. *Fleetwood Construction Co. v. Western Steel Co.*, 510 S.W.2d 161, 165 (Tex.Civ.App.-Corpus Christi 1974, no writ), *quoting* 2 R. McDonald, Texas Civil Practice section 6.14.4 (rev. 1970).

■ Upon examining the petition, it is clear that Milford sought to impose liability upon McKinnie, because McKinnie accepted the horse with knowledge of the contractual rights reserved by Milford under the contract. McKinnie's acceptance of the horse under these circumstances amounted to a promise to abide by the contract and was enforceable by both Milford and Stewart. Since McKinnie did not specially except to the petition to demand additional details to give fair notice of the basis of Milford's claim, we believe that the petition as a whole was sufficient to allege a cause of action against McKinnie for breach of contract. McKinnie's first point of error is overruled.

In points two through sixteen, McKinnie contends that there is no evidence or insufficient evidence and no jury findings of the following four categories: (1) liability of McKinnie to Milford; (2) a contract between McKinnie and Milford; (3) assumption by McKinnie of the contract between Milford and Stewart; and (4) lack of consideration to support a contract between Milford and McKinnie. Accordingly, McKinnie argues that since no issues relating to his liability were submitted to the jury and the undisputed evidence establishes that he was not liable to Milford under the contract in question, the trial court erred in rendering judgment against him. We do not agree.

■ The facts, insofar as McKinnie's liability is concerned, are not in dispute. McKinnie admits that he read the agreement between Milford and Stewart and bought the horse with full knowledge of the rights reserved by Milford in the written contract. In his testimony, he recognized that Milford had a right to two breedings per year. His only reason for not complying with the contract was that Milford had not paid certain board bills and veterinary fees owed Stewart during previous breedings. He testified that until Milford's "business was straightened out with the former owner and his vet bill was paid that I would not breed his mares. . . ." He further testified that "[i]f the contract run

over into me, transferred to me and I was going to live up to the contract Mr. Milford should live up to his." It is thus clear that he recognized that when Stewart transferred his interest in the horse to him, he knew that he had the duty of allowing two breedings per year as provided for in the written contract and would have been willing to comply with the contract but for Milford's failure to pay Stewart's board and veterinary bills. There is nothing to show in the record that Stewart, by his contract with Milford, could not delegate the duties required by the contract to McKinnie. Further, it is clear that Milford had no particular interest in not allowing Stewart to delegate the duties required by the contract. Milford was only interested in getting his two breedings per year, and such performance could only be obtained from McKinnie after he bought the horse from Stewart. Therefore, since no language or circumstances suggested anything to the contrary, it is clear that McKinnie agreed to accept the responsibility of allowing Milford two breedings per year.

The Texas Business and Commerce Code provides that a party to a contract may perform his duty through a delegate by assigning or transferring the contract to a third party unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. Tex.Bus. & Com. Code Ann. section 2.210(a) (Tex.U.C.C.) (Vernon 1968). The code further provides that unless otherwise agreed, all rights of the buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden of risk imposed on him by his contract, or impair materially his change of obtaining return performance. Tex.Bus. & Com. Code Ann. section 2.210(b) (Tex.U.C.C.) (Vernon 1968). A general assignment of the contract will assign the rights and, unless the language or the circumstances indicate the contrary, will delegate the performance of the duties of the assignor, and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract. Tex.Bus. & Com. Code Ann. section 2.210(d) (Tex.U.C.C.) (Vernon 1968). Also, it has been held by the courts of this state that when a contract is assigned to a third party, the assignee becomes liable for the contractual performance of the original buyer, even though the original buyer remains liable on the contract. *Tennell v. Esteve Cotton Co.*, 546 S.W.2d 346, 352 n.3 (Tex.Civ.App. Amarillo 1976, writ ref'd n. r. e.).

Applying the foregoing provisions of the Texas Business and Commerce Code to the facts of the present case, it is clear that none of the exceptions set forth in the Texas Business and Commerce Code prevented Stewart from delegating his duty of making the horse available to Milford for two breedings per year. As the assignor, Stewart delegated the performance of the duties to McKinnie. McKinnie's acceptance of title to the horse, with full knowledge of the obligations imposed by the written contract, constitutes a promise by McKinnie, the assignee, to perform those duties. According to section 2.210(d) of the code, this implied promise on the part of McKinnie is enforceable by either Stewart, his assignor, or by Milford, the other party to the original contract. Thus, upon applying the provision of the code, it appears that Milford's proof was sufficient to establish liability as a matter of law.

McKinnie argues, however, that there is no evidence that he assumed the contract between Milford and Stewart. We do not agree. The implied intention of the assignee, where the whole contract has been assigned, is set forth in section 164 of the Restatement of Contracts, from which we quote:

(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is

interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

(2) Acceptance by the assignee of such an assignment is interpreted in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties.

Thus, according to the Restatement, the courts may imply an assumption of the obligations of the contract from the acceptance of an assignment. Inasmuch as there is nothing in the record indicating that McKinnie did not intend to assume obligations imposed by the contract, it will be implied that he assumed the obligations imposed by the contract between Milford and Stewart.

 It has long been the rule that when legal title passes from one under an equitable obligation, the transferee, who takes with notice of such existing equitable claim or right in the subject matter held by a third person, will be held liable in equity to the same extent and in the same manner as the person from whom he made the purchase. *Burkhart v. Brownfield*, 33 S.W.2d 885, 888 (Tex.Civ.App.-Fort Worth 1930, no writ), *quoting Coleman v. Dunman*, 67 Tex. 390, 3 S.W. 319, 320 (1887). McKinnie, having accepted legal title to the horse with notice of Milford's contractual right therein, is liable to the same extent and in the same manner as his transferor Stewart.

 This brings us to McKinnie's contention that the court erred in rendering judgment against him because Milford failed to submit or obtain any jury findings that McKinnie assumed the contract between Milford and Stewart or breached any duty owed to Milford. As we view the record, the facts surrounding the transaction are not in dispute. There is nothing in the record indicating that McKinnie did not intend to assume the obligations of the contract. It is without dispute that at the time legal title was transferred to him, McKinnie knew of Milford's equitable claim. Under these circumstances, the assumption of the contractual obligations will be implied. McKinnie admitted that he refused to fulfill the obligations imposed by the contract. Inasmuch as the facts are sufficient to establish liability for breach of contract as a matter of law, it was not necessary that Milford submit or obtain any jury findings on the issue of liability. Tex.R.Civ.P. 279; *National Security Life & Casualty Co. v. Benham*, 233 S.W.2d 334 (Tex.Civ.App.-Amarillo 1950, writ ref'd n. r. e.).

All points of error have been considered and are overruled.

The judgment of the trial court is affirmed.