**Opinion issued November 21, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-12-00577-CV

———————————

### NEXTERA RETAIL OF TEXAS, LP, Appellant

### V.

### INVESTORS WARRANTY OF AMERICA, INC., Appellee

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-36374**

### O P I N I O N

Appellant NextEra Retail of Texas, LP challenges the trial court's judgment granting appellee Investors Warranty of America, Inc.'s motion for summary judgment and denying NextEra's motion for summary judgment. In three issues, appellant argues (1) Investors Warranty expressly assumed the obligations of the

contract between NextEra and another party; (2) Investors Warranty impliedly assumed and ratified the obligations of that contract; and (3) the statute of frauds has no relevance to the dispute.

We affirm.

## Background

On October 3, 2008, NextEra—named at the time Integrys Energy Services of Texas, LP—and CFS Northwind, L.P. entered into a contract for the provision of electricity. The electricity contract provided that NextEra would sell and deliver electricity to CFS at a specified location in Houston, Texas, for five years, ending on November 1, 2013. Among the provisions in the contract was a clause governing assignment of the contract:

> There are no third party beneficiaries to the Agreement and none are intended. This Agreement will not be assigned or transferred by you [CFS] without prior written consent, which consent will not be unreasonably withheld. We [NextEra] may assign this Agreement to our parent, affiliate, subsidiary, or successor to all or a material portion of our assets as long as notice is provided as soon as reasonably practicable.

The contract also outlined the penalty for early termination of the contract:

> "Early Termination" means we [NextEra] (i) receive notice from any ISO or Utility that your [CFS's] Account has moved away or will be moving away from our account at ERCOT and we subsequently provide you with written notice that we acknowledge such notice from the ISO or Utility; or (ii) we receive notice from you, your agent or representative (which includes any third-party aggregator, broker or consultant) that you are terminating service to your Account(s).

2

The property owned by CFS was subject to a mortgage in favor of its lender, Investors Warranty. At some point after entering into the contract with NextEra, CFS defaulted on its loan and surrendered the property to Investors Warranty under a Deed in Lieu of Foreclosure. As a part of the transaction, CFS assigned its rights under the electricity contract to Investors Warranty without notifying NextEra.

The assignment contract expressly stated that Investors Warranty would not assume any obligations or liabilities under CFS's contracts. Specifically, the contract provided:

> [N]either Lender [Investors Warranty], nor any of the Lender Parties, has or does hereby assume or agree to assume any liability whatsoever of Owner [CFS], and neither Lender nor any of the Lender Parties assumes or agrees to assume any obligation of Owner under any contract, lease, agreement, indenture or any other document to which Owner is a party, by which Owner is or may be bound or which in any manner affects the Property, or any part thereof, except as otherwise expressly agreed to by Lender in this Agreement and the Deed.

Investors Warranty operated under the electricity contract for nine months after the foreclosure proceedings, and Investors Warranty fully paid for the electricity provided. Four months after CFS assigned the electricity contract, Investors Warranty sent NextEra a letter seeking to negotiate an electricity contract for the Property. In pertinent part, it wrote,

> Integrys Energy Services of Texas, LP had entered into a Power Sale Agreement (hereinafter referred to as "Agreement") with CFS Northwind, LP, the previous owner, effective October 3, 2008 (copy

3

enclosed for your reference). This agreement was not assumed when [Investors Warranty] became the new owner. [Investors Warranty] would like to discuss the possibility of entering into a new power purchase agreement with Integrys.

NextEra never responded. At the end of the nine-month period, Investors Warranty entered into a new agreement with a different electricity provider.

NextEra filed suit against CFS and Investors Warranty to recover early termination damages, asserting that Investors Warranty's change in electricity providers was an "Event of Default or Early Termination" under the electricity contract. Investors Warranty filed an answer. CFS did not file an answer, and the trial court ultimately rendered default judgment against CFS.

Investors Warranty later filed a motion for summary judgment, arguing that the evidence conclusively established that it was not an original party to the electricity agreement and that it did not expressly or impliedly assume any obligations under the electricity contract based on the language of the assignment or its subsequent actions. NextEra also filed a motion for summary judgment, arguing that Investors Warranty had expressly assumed the electricity contract when it signed and accepted the Deed in Lieu of Foreclosure Agreement. In its response to Investors Warranty's motion for summary judgment, NextEra argued Investors Warranty impliedly assumed and ratified the obligations under the electricity contract by taking the benefits of the electricity contract and operating

4

under the contract for nine months after acquiring the property from CFS. The trial court granted Investors Warranty's motion and denied NextEra's motion.

## Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is established as a matter of law if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller,* 168 S.W.3d at 827). We

5

indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## Analysis

Investors Warranty sought summary judgment, arguing that it could not be held liable for any injury suffered by NextEra from a breach of contract. Generally, a party cannot be held liable under another party's contract without an express or implied assumption of the obligations of that contract. *Jones v. Cooper Indus. Inc.*, 938 S.W.2d 118, 125–26 (Tex. App.—Houston [14th Dist.] 1996, writ denied). It is undisputed that Investors Warranty was not a party to any contract with NextEra. NextEra argues that Investors Warranty is liable under the electricity contract based on express assumption, implied assumption, and ratification. These are all affirmative defenses. *See* TEX. R. CIV. P. 94.

### A. Express Assumption

In its first issue, NextEra argues that Investors Warranty expressly assumed the obligations of the electricity contract. It argues that, by signing the Deed in

Lieu of Foreclosure Agreement, which contained language of acceptance regarding the assignment of CFS' contractual interests, Investors Warranty also assumed the obligations under the contract.

Generally, the assignor of a contract remains liable for the obligations he originally assumed, even after the contract is assigned. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 346–47 (Tex. 2006). In contrast, the assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumes them. *See Jones*, 938 S.W.2d at 124.

Contrary to NextEra's contention, "[t]he mere acceptance of an assignment does not create a liability against the accepting party." *Jones*, 938 S.W.2d at 126. Instead, there must be actual promissory words, or words of assumption, on the part of the assignee for there to be an express assumption of contractual obligations. *Id*. at 124 (citing *Lone Star Gas co. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 201 (Tex. App.—Dallas 1992, no writ)).

NextEra argues that, because Investors Warranty *accepted* CFS's contractual interests in the Deed in Lieu of Foreclosure Agreement, Investors Warranty also *assumed* CFS's contractual obligations. In an example, NextEra points to a provision in the foreclosure agreement stating that the contracts identified to be assigned, which includes the electricity contract, "shall be executed, delivered and *accepted* by" Investors Warranty. (Emphasis added.) In making this argument that

7

acceptance of a contract constitutes assumption of a contract, NextEra relies on a section of the Uniform Commercial Code's provisions for the sale of goods. *See* TEX. BUS. & COM. CODE ANN. § 2.210(e) (Vernon 2009) (concerning assigments); *see also* TEX. BUS. & COM. CODE ANN. § 2.102 (Vernon 2009) (providing chapter two applies to transactions in goods). Subsection 2.210(e) of the Texas Business and Commerce Code provides that an assignment written in general terms "is an assignment of rights and unless the language or the circumstances . . . indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties." *Id.* § 2.210(e). It also provides that such an assignment is enforceable by the other party to the original contract. *Id.*

Even assuming the electricity contract can be construed as a contract for the sale of goods, subsection 2.210(e) does not establish any error. As NextEra recognizes, assignments under subsection 2.210(e) have their full effect "unless the language or the circumstances . . . indicate the contrary." *Id.* The language of the foreclosure agreement expressly disclaims any assumption of any obligation under the electricity contract.

> [N]either Lender [Investors Warranty], nor any of the Lender Parties, has or does hereby assume or agree to assume any liability whatsoever of Owner [CFS], and *neither Lender nor any of the Lender Parties assumes or agrees to assume any obligation of Owner under any contract*, lease, agreement, indenture or any other document to which Owner is a party, by which Owner is or may be bound or which in any

8

manner affects the Property, or any part thereof, *except as otherwise expressly agreed to by Lender in this Agreement and the Deed.*

(Emphasis added.) The contract does not expressly provide for the assumption of the electricity contract. Accordingly, assumption of the electricity contract was expressly disclaimed.

We overrule NextEra's first issue.

## B.      Implied Assumption

In part of its second issue, NextEra argues that Investors Warranty impliedly assumed the obligations under the electricity contract based on its actions after signing the Deed in Lieu of Foreclosure Agreement. NextEra contends that, because Investors Warranty accepted the benefits of the contract for nine months following CFS's default, Investors Warranty should also be responsible for the contract's underlying liabilities, or it will be unjustly enriched.

As stated above, an assignee cannot be held liable under another party's contract without an express or implied assumption of that contract's obligations. *See Jones*, 938 S.W.2d at 125–26. "Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract." *Id.* at 124. Implied covenants can be found (1) when the term was so clearly within the contemplation of the parties that they deemed it unnecessary to express it or (2) on equitable grounds. *Jones*, 938 S.W.2d at 124–25 (citing *Danciger Oil & Ref.*

9

*Co. of Tex. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)). NextEra argues an implied assumption on equitable grounds.

An implied assumption of obligations may arise "when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched." *Id.* at 125 (citing *Lone Star Gas*, 833 S.W.2d at 203). NextEra argues that Investors Warranty is unjustly enriched by operating under the contract, thus benefitting from the long-term fixed rates without assuming any of the liabilities. It relies primarily on two cases as authority for this argument: *McKinnie v. Milford*, 597 S.W.2d 953 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.) and *Kirby Lumber Co. v. R.L. Lumber Co.*, 279 S.W. 546 (Tex. Civ. App.—Beaumont 1926, no writ).

In *Kirby Lumber*, a timber contract provided that Kirby would sell timber to the buyer, who was required to make periodic payments. 279 S.W. at 547. However, the buyer assigned the contract, and the assignee subsequently cut and removed timber without paying for it. *Id.* at 546. The court held that the assignee had both the right to enforce the contract and the obligations associated with it because the benefit was so entwined with the burden that allowing the assignee to remove the timber without paying for it would lead to unjust enrichment. *Id.* at 549.

10

This case is distinguishable from *Kirby Lumber* by the simple fact that Investors Warranty paid for the electricity provided as each monthly bill became due to CFS. NextEra argues that the unjust enrichment stems from benefitting from the rates of the long-term contract. While this may show that Investors Warranty *benefitted* from the contract, it does not establish that Investors Warranty was *unjustly enriched*.

NextEra relies on *McKinnie* for the proposition that courts may imply an assumption of contractual obligations from the acceptance of an assignment so long as there is nothing in the record indicating a contrary intention. 597 S.W.2d at 958. This means that evidence of contrary intention disproves a claim of implied assumption. *See id.* It does not mean that a claim of implied assumption is proved by the absence of an express contrary intention. *See Jones*, 938 S.W.2d at 124 (recognizing implied covenants are not favored and not lightly implied).

Nevertheless, there is evidence of a contrary intention. The Deed in Lieu of Foreclosure Agreement expressly disclaims any assumption of the obligations under the contract for the provision of electricity. Further, Investors Warranty sent a letter to NextEra on April 24, 2010, stating that Investors Warranty had not assumed the electricity contract. Instead, it wanted to discuss creating a new power purchase agreement with NextEra.

We overrule this part of NextEra's second issue.

11

## C.    Ratification

In the remaining part of its second issue, NextEra argues that Investors Warranty's actions surrounding and following the Deed in Lieu of Foreclosure Agreement indicate Investors Warranty's intent to ratify CFS's contract with NextEra. Specifically, NextEra points to Investors Warranty's operation under the contract for nine months before terminating the contract as well as to the communications between CFS and Investors Warranty.

Ratification concerns a party taking an unauthorized act on behalf of another party, who then obtains knowledge of the act and retains the benefit of the transaction. *See Land Title Co. of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). There is no evidence anywhere in the record to suggest that CFS ever purported to act on behalf of Investors Warranty. Instead, the opposite is established: CFS contracted with NextEra on its own behalf for its own benefit. We hold ratification does not apply in this situation.

We overrule the remainder of NextEra's second issue. Because we hold that the trial court did not err by granting summary judgment on the grounds that Investors Warranty did not assume the obligations of the electricity contract, we do not need to address NextEra's remaining issue of whether the statute of frauds would also have prevented NextEra from recovering. *See* TEX. R. APP. P. 47.1.

12

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.