# IN THE SUPREME COURT OF TEXAS

No. 19-0243

BRYAN C. WAGNER, WAGNER OIL COMPANY, TRADE EXPLORATION CORPORATION, AND WAGNER & COCHRAN, INC., PETITIONERS,

V.

APACHE CORPORATION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

*~ consolidated with ~*

No. 19-0244

BRYAN C. WAGNER, WAGNER OIL COMPANY, TRADE EXPLORATION CORPORATION, AND WAGNER & COCHRAN, INC., PETITIONERS,

V.

APACHE CORPORATION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued February 3, 2021**

JUSTICE BUSBY delivered the opinion of the Court.

JUSTICE HUDDLE did not participate in the Court's decision.

This case requires us to decide whether indemnity claims fall within an exception to an arbitration clause. Also at issue is whether non-signatory assignees are bound by the agreement to arbitrate. The trial court held that the claims fell within the exception and should not be arbitrated. The court of appeals reversed, holding that the claims did not fall within the exception. The court of appeals also held that the non-signatory assignees were bound by the agreement under a theory of assumption. We agree with the court of appeals' judgment and therefore affirm.

## BACKGROUND

In 2001, Wagner Oil Company purchased several assets from Apache Corporation, including oil and gas wells, mineral leases and fee interests, and personal property used in connection with the operation of the wells. Bryan Wagner signed the Purchase and Sale Agreement (PSA) as president of Wagner Oil. Under an indemnification provision, Wagner Oil agreed to

> defend, indemnify, release and hold harmless Seller against all losses, damages, claims, demands, suits, costs, expenses, liabilities and sanctions of every kind and character, including without limitation reasonable attorneys' fees, court costs and costs of investigation, which arise from or in connection with (i) any of the claims, costs, expenses, liabilities and obligations assumed by Buyer . . . , or (ii) any breach by Buyer of this agreement.[1]

The PSA also contained an arbitration clause:

---

[1] This text appeared in all capital letters in the original, but we have normalized the capitalization for readability.

2

Arbitration. Any disputes arising out of or in connection with this Agreement or the application, implementation, validity, breach or termination of this Agreement shall be finally and exclusively resolved by arbitration in Houston, Texas pursuant to the dispute resolution provisions contained in Exhibit B. ***Notwithstanding the above***, in the event a third party brings an action against Buyer or Seller concerning this Agreement or the Assets or transactions contemplated herein, Buyer and Seller shall not be subject to mandatory arbitration under this section and Buyer or Seller shall each be entitled to assert their respective claims, if any, against each other in such third party action.

(Emphasis added). Arbitration under the PSA would be governed by the Federal Arbitration Act (FAA). The PSA also provided that it was "binding upon, and shall inure to the benefit of, the Parties hereto, and their respective successors and assigns." At the same time the parties executed the PSA, Apache assigned the assets to Wagner Oil in an Assignment, Conveyance, and Bill of Sale (the Apache Assignment).

Following this transaction, Wagner Oil assigned the assets to Bryan Wagner (80%), Trade Exploration Corp. (19%), and Wagner & Cochran, Inc. (1%) (the Wagner Oil assignees). This Wagner Oil Assignment provided that it was "subject to all terms, provisions and conditions contained in the APACHE Assignment, and Assignees assume and agree to be bound by and perform their proportionate parts of all obligations imposed upon Assignor by the APACHE Assignment."

Beginning in 2010, third-party surface landowners filed five lawsuits in Louisiana against Apache, seeking damages for alleged environmental contamination caused by Apache's operation of the assets before it sold them to Wagner Oil. In 2017, Apache filed a demand for arbitration in Harris County with the American Arbitration Association against Wagner Oil, Bryan Wagner, Trade Exploration, and Wagner & Cochran (collectively, plaintiffs) for indemnity and defense. A month later, plaintiffs filed a declaratory judgment action in Tarrant

3

County district court seeking several declarations, including that: (1) Bryan Wagner, Trade Exploration, and Wagner & Cochran are not parties to the PSA and therefore not subject to the arbitration and indemnity clauses; (2) the Wagner Oil Assignment does not obligate Bryan Wagner, Trade Exploration, and Wagner & Cochran to defend or indemnify Apache; (3) Apache was not a third-party beneficiary of the Wagner Oil Assignment; and (4) a claim for defense and indemnity arising from a third-party lawsuit shall not be subject to mandatory arbitration.

Apache filed a motion to transfer venue in the Tarrant County suit, asserting that venue was mandatory in Harris County under both the arbitration clause of the PSA and Texas Civil Practice and Remedies Code sections 171.096 and 171.097. In the alternative, Apache filed a motion to abate and compel arbitration. Plaintiffs responded with an application to stay the arbitration proceedings. After the trial court held a hearing on the motions, it granted plaintiffs' application to stay the arbitration proceedings initiated by Apache. The trial court also denied Apache's motion to abate and compel arbitration and its motion to transfer venue. Apache filed an interlocutory appeal challenging the trial court's denial of its motion to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1).[2]

The court of appeals reversed, concluding that the trial court abused its discretion by denying Apache's motion to compel arbitration. __ S.W.3d __, __ (Tex. App.—Fort Worth 2018). The court first held that the PSA included a valid agreement to arbitrate. *Id.* at __. The court then addressed whether the Wagner Oil assignees—as non-signatories to the PSA—were

---

[2] As we discuss below, Apache also filed a petition for writ of mandamus challenging the trial court's refusal to transfer the case to Harris County, which the court of appeals denied without opinion. *In re Apache Corp.*, No. 02-18-00137-CV, 2018 WL 2248500 (Tex. App.—Fort Worth May 17, 2018, orig. proceeding).

subject to the PSA's arbitration clause. *Id.* at __. The court observed that "an assignee may be held liable under another party's contract if it makes an express or implicit assumption of the contract's obligations." *Id.* (citing *NextEra Retail of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). The PSA provided that it was binding on the parties and "their respective successors and assigns," the Apache Assignment was subject to all terms and conditions of the PSA, and the Wagner Oil Assignment provided that it was subject to all terms in the Apache Assignment and that the assignees assumed and agreed to be bound by obligations in the Apache Assignment. *Id.* Based on those provisions, the court concluded that the Wagner Oil assignees were bound by the arbitration clause.

Finally, the court considered whether the declaratory judgment action fell within the scope of the arbitration clause. *Id.* at __. The arbitration clause contains a carve-out (quoted above) concerning third-party actions. Plaintiffs asserted that this carve-out applies to claims involving a third party and the assets, allowing such claims to be litigated either as part of the third-party action or in a separate suit. *Id.* The court disagreed, reading the carve-out as "limited to cross-claims within a third-party action." *Id.* The court came to this conclusion "not only [after] applying the plain language used in the PSA but also by taking a utilitarian view of the business activity sought to be served here." *Id.* The court reasoned that the "overriding theme" of the PSA was for Apache to walk away from its liabilities—other than those specifically retained—and that the PSA contained a broad indemnification provision. *Id.* The court therefore vacated the trial court's order and remanded the case for the trial court to compel arbitration. We granted plaintiffs' petition for review.

ANALYSIS

In this Court, the parties dispute whether (1) the arbitration carve-out is limited to cross-claims made in a third-party action, (2) the non-signatory Wagner Oil assignees are bound by the agreement to arbitrate, and (3) the case should be transferred to Harris County. We hold that the arbitration carve-out applies only to cross-claims filed in a third-party action, so the claims here must be arbitrated. We also hold that the Wagner Oil assignees assumed the obligation to arbitrate. But we decline to transfer the case to Harris County.

## I. The indemnity disputes over third-party claims fall within the scope of the arbitration clause and outside its exception.

Under the FAA, which governs the arbitration agreement here, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claims fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). Once a party has proved that a valid arbitration agreement exists, "[d]oubts regarding an agreement's *scope* are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA." *Id.* We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). But whether disputed claims fall within the scope of an arbitration agreement is a question that we review de novo. *Id.*

The parties agree that there is a valid agreement to arbitrate. But plaintiffs assert that their claims are not within the scope of the arbitration clause because it includes a clear carve-out for disputes arising out of third-party claims. Apache counters that plaintiffs' interpretation is unreasonable as a matter of law because it treats key language in the carve-out as surplusage and violates basic grammar rules.

6

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Arbitration agreements are on equal footing with other contracts and must be enforced according to their terms. *Id.* "[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Additionally, the FAA allows parties to exclude certain claims from the scope of an arbitration agreement. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). We turn to the language of the PSA to determine whether the claims at issue fall within the scope of the arbitration agreement.

The arbitration carve-out in the PSA provides:

> Notwithstanding the above [arbitration provision], in the event a third party brings an action against Buyer or Seller concerning this Agreement or the Assets or transactions contemplated herein, Buyer and Seller shall not be subject to mandatory arbitration under this section and Buyer or Seller shall each be entitled to assert their respective claims, if any, against each other in such third party action.

Pointing to the closing language referencing a third-party action, the court of appeals held that the carve-out was limited to cross-claims within such actions. __ S.W.3d at __. We agree that the carve-out does not permit plaintiffs to pursue their request for a declaratory judgment regarding defense and indemnity obligations in court.

Giving meaning to all the contractual language in the carve-out, we conclude that this language gives the parties two options in the event a third party brings an action concerning the assets. First, they could choose to submit their resulting claims against each other to arbitration. The carve-out provides that in the event of a third-party action, the parties "shall not be subject to

7

*mandatory* arbitration," but nothing prohibits them from electing arbitration in accordance with their general agreement to arbitrate.

The parties also had a second option: they "shall each be entitled to assert their respective claims, if any, against each other in such third-party action." We agree with the court of appeals that this option applies only if the claims are brought in a third-party action and does not also allow the claims to be brought in a separate suit.

In the language "Buyer and Seller shall not be subject to mandatory arbitration under this section *and* Buyer or Seller shall each be entitled to assert their respective claims, if any, against each other in such third party action," *and* is a coordinating conjunction joining the preceding and following clauses. Thus, in the event of a third-party action, both clauses are equal in exempting the claims from arbitration. Together, they make clear that if the parties wish to bring cross-claims against each other following a third-party action, they may do so in the third-party action and are not required to arbitrate.

Plaintiffs contend that "and" should be construed as referring to "either or both" of two alternatives, which would result in the clauses before and after "and" being stand-alone, permissive options so that *any* dispute arising from a third-party lawsuit would fall under the carve-out in the first clause. Such a construction renders meaningless the second clause, and particularly the language "in such third-party action." That clause serves no purpose unless it is limiting the available options. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.").

8

Even if the contract were silent about asserting claims in a suit separate from the third-party action, we would reach the same conclusion. "Once a valid arbitration agreement is established, a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013) (quoting *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011)). The arbitration clause itself is broad, applying to "any disputes." *See Perry Homes v. Cull*, 258 S.W.3d 580, 585 n.4 (Tex. 2008) (describing as "broad" an arbitration clause providing for arbitration of "[a]ny unresolved dispute"). Any doubts as to the agreement's scope and whether the carve-out applies to indemnity disputes filed outside of third-party actions should be resolved in favor of arbitration. *See Rachal*, 403 S.W.3d at 850.

Plaintiffs assert that the presumption in favor of arbitration does not apply here because it arises only after a party moving for arbitration proves a valid, enforceable agreement to arbitrate "the dispute in question." We disagree with plaintiffs' characterization of the presumption. A party seeking to compel arbitration must establish two things: (1) the existence of a valid arbitration agreement and (2) that the disputed claims fall within the scope of that agreement. *In re Kellogg Brown & Root*, 166 S.W.3d at 737. We have explained that the presumption arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See, e.g.*, *id.* (citing *Webster*, 128 S.W.3d at 227). Once the validity of an agreement is established, the presumption applies to determine an agreement's scope. *Id.*; *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782 (Tex. 2006) ("The strong presumption favoring arbitration generally requires that we resolve doubts as to the scope of the agreements in favor of coverage."). The presumption in favor of arbitration applies here.

9

Plaintiffs also argue that the court of appeals' interpretation renders meaningless the term "notwithstanding the above [arbitration provision]" at the beginning of the carve-out. Plaintiffs assert that the term "notwithstanding" means that no matter what the rest of a document says, a certain provision controls. Plaintiffs cite *University of Texas v. Garner*, 595 S.W.3d 645, 650 (Tex. 2019) (per curiam), in which we stated "[t]he use of the word 'notwithstanding' indicates that the Legislature intended subsection (f) to control when its conditions are met." But our interpretation of the carve-out is consistent with this direction. The conditions of the carve-out in this case would be met when the parties assert their respective claims, if any, against each other in a third-party action. Because that condition was not met, the carve-out introduced by "notwithstanding" does not apply.

Plaintiffs point to *Archer & White Sales, Inc. v. Henry Schein, Inc.*, also involving an arbitration carve-out, as instructive. 935 F.3d 274, 283 (5th Cir. 2019), *cert. dismissed as improvidently granted*, 141 S. Ct. 656 (2021). Plaintiffs assert that the Fifth Circuit declined to apply a narrow reading of a carve-out that did not comport with the agreement's plain language. The arbitration clause in that case excluded "actions seeking injunctive relief." *Id*. The court concluded that an action seeking both injunctive relief and damages was not subject to mandatory arbitration, noting that the carve-out was not limited to "actions seeking only injunctive relief," "actions for injunction in aid of an arbitrator's award," nor "*claims* for injunctive relief." *Id.*

Nothing in our decision today is inconsistent with the Fifth Circuit's holding. Like the Fifth Circuit, we also interpret the arbitration carve-out according to its plain language.

10

Plaintiffs also assert that the court of appeals erred by considering Apache's intent and the merits of the dispute when determining the scope of the arbitration provision. The court of appeals focused on the plain language of the provision, but it also took "a utilitarian view of the business activity sought to be served." __ S.W.3d at __. The court noted that "the overriding theme of the PSA was for Apache to walk away from all but its specific retained liabilities" in holding that the indemnity claims were not excepted from arbitration. *Id.* __. Plaintiffs contend that this reliance on Apache's intent and the merits of the dispute led the court to an improper conclusion. We agree with plaintiffs that the court of appeals improperly considered Apache's unexpressed intent, but we agree with the court's ultimate conclusion that the claims at issue must be arbitrated.

In construing a contract, including an arbitration provision, our primary concern is to determine the intent of the parties as expressed by the plain language of the contract. *Webster*, 128 S.W.3d at 229. A court must examine and consider the entire writing to harmonize and give effect to all provisions, but no one asserts here that the arbitration provision conflicts with any other portions of the PSA or that the provision cannot be given a definite legal meaning. *See id.* ("A contract is unambiguous if it can be given a definite or certain legal meaning."). The intent of the parties in this case to be bound by arbitration is clearly expressed in the language of the arbitration provision. Any consideration of unexpressed intent was unnecessary and in conflict with contract interpretation principles requiring intent to be determined by an unambiguous contract's plain language. *See id.*

11

## II. The Wagner Oil assignees are bound to the arbitration agreement.

Plaintiffs next challenge the court of appeals' holding that the Wagner Oil assignees are bound by the arbitration clause. Under the FAA, an obligation to arbitrate does not attach only to those who have personally signed the written arbitration agreement. *In re Kellogg Brown & Root*, 166 S.W.3d at 738. Federal courts have recognized that contract law and agency principles can bind a non-signatory to an arbitration agreement under the following theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Id.* at 739.

Apache argues that incorporation by reference and assumption are applicable here. The PSA containing the arbitration clause provides that it is "binding upon, and shall inure to the benefit of, the Parties hereto, and their respective successors and assigns." The Apache Assignment to Wagner Oil states "TO HAVE AND TO HOLD the Assets unto [Wagner Oil], its successors and assigns, forever, pursuant to and subject to all of the terms and conditions as set forth in this Assignment . . . and further subject to the terms and conditions of that certain [PSA]." The Wagner Oil Assignment to the assignee plaintiffs provides in turn that it is "subject to all terms, provisions and conditions contained in the APACHE Assignment, and Assignees assume and agree to be bound by and perform their proportionate parts of all obligations imposed upon Assignor by the APACHE Assignment."

The court of appeals agreed that the Wagner Oil assignees were bound by the arbitration clause under the theory of assumption. An assignee is not liable under another party's contract without an express or implied assumption of the contract's obligations. *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied). To assume a

contractual obligation, there must be promissory words or words of assumption on behalf of the assignee. *Id.* (citing 4 A. CORBIN, CORBIN ON CONTRACTS § 906, at 632 n.1). The Wagner Oil assignment to plaintiffs contained such words of assumption: "Assignees assume and agree to be bound by and perform their proportionate parts of all obligations imposed upon Assignor by the APACHE assignment."[3]

Plaintiffs argue that they did not agree to assume all obligations in the Apache Assignment. Rather, they assert that their clear intent was to assume and agree to perform only their proportionate share of divisible obligations, such as the obligation to indemnify Apache. But because the obligation to participate in arbitration is not divisible, the Wagner Oil assignees contend they did not agree to assume that obligation. We disagree with plaintiffs' reading of the assumption.

In the Wagner Oil assignment, plaintiffs as assignees "[1] assume and [2] agree to [a] be bound by and [b] perform their proportionate parts" of "all obligations imposed upon Wagner Oil." Plaintiffs' position that they assumed only proportionately divisible obligations—part 2b above—is not consistent with the language of the entire assignment. They assumed and agreed to be bound by "all" obligations imposed on Wagner Oil. All obligations means **all** obligations.

Plaintiffs also assert that as assignees under the Wagner Oil assignment, they are not obligated to the PSA's arbitration provision based on the language in the Apache Assignment. The Wagner Oil Assignment was subject to all terms in the Apache Assignment, and the

---

[3] The court of appeals also observed that one of the plaintiff assignees, Bryan Wagner, signed the PSA and Apache assignment on behalf of Wagner Oil, "giving him intimate familiarity with these documents' requirements before he signed the WOC Assignment in his personal capacity." __ S.W.3d at __. As we recently explained in another case, however, Wagner's participation in those transactions on behalf of another entity cannot provide support for binding him to arbitrate personally. *See Rieder v. Woods*, 603 S.W.3d 86, 101 (Tex. 2020) (holding party that signed in representative capacity was not transaction participant in his personal capacity).

13

assignees assumed all obligations of Wagner Oil in that assignment. The Apache Assignment provided that it was "subject to the terms and conditions" of the PSA. Citing *Lone Star Gas Co. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 201 (Tex. App.—Dallas 1992, no writ), plaintiffs argue that the phrase "subject to" in the Apache Assignment, without more, does not subject them to arbitration as assignees of Wagner Oil.

In *Lone Star Gas*, the court of appeals held that an assignment made "subject to" a contract did not obligate the assignee to pay the prior debt of the assignor because the words were not "express promissory words, or words of 'assumption.'" *Id.* But the question whether the language in the Apache Assignment constitutes express words of assumption is inapposite. The Apache Assignment was an Assignment, Conveyance and Bill of Sale of specified property from Apache to Wagner Oil. Wagner Oil was a signatory to both the PSA and the Apache Assignment; it did not need to assume any contractual obligations in the PSA through the Apache Assignment, as it was already obligated to fulfill those obligations under the PSA. Wagner Oil agreed to arbitration in the PSA and agreed again in the Apache Assignment that the assignment of Apache's assets was subject to the terms and conditions of the PSA. No express words of assumption were required, as the Apache Assignment was not an assignment of Wagner Oil's obligations and Wagner Oil was a signatory to both documents. Assumption of contractual obligations is inapplicable in such a situation. *See Jones*, 938 S.W.2d at 124.

In conclusion, the Wagner Oil assignees expressly assumed and agreed to be bound by all of Wagner Oil's obligations, including its obligation to arbitrate. We agree with the court of appeals that the Wagner Oil assignees are subject to the PSA's arbitration clause.

14

### III.  Apache is not entitled to a transfer of venue.

In addition to requesting that we affirm the court of appeals' decision ordering the case to arbitration, Apache also requests that we order the case transferred to Harris County for purposes of resolving any future arbitration-related disputes.  To understand the proper resolution of this issue, some additional background information is helpful.

Apache filed its demand for arbitration in Harris County.  Plaintiffs then filed this action in Tarrant County.  Apache filed a motion to transfer venue to Harris County pursuant to the mandatory venue provisions in Texas Civil Practice and Remedies Code sections 171.096(b) and 171.097(a).  Apache concurrently filed a Motion to Abate and Compel Arbitration, arguing that "should the court deny Apache's motion to transfer then Apache respectfully requests that the court compel arbitration."  The trial court denied the motion to transfer venue on March 27, 2018.  Two weeks later, the court denied Apache's Motion to Abate and Compel Arbitration and granted plaintiffs' application to stay the arbitration proceedings.

Apache filed a petition for writ of mandamus in the court of appeals, challenging the denial of the motion to transfer venue.  The court denied relief without a substantive opinion.  *In re Apache Corp.*, No.  02-18-00137-CV, 2018 WL 2248500 (Tex. App.—Fort Worth May 17, 2018, orig. proceeding).  Apache did not seek mandamus relief from this Court.

Apache also filed this separate interlocutory appeal challenging the trial court's failure to compel arbitration.  __ S.W.3d at __.  In the court of appeals, Apache argued that the trial court erred by denying arbitration but also argued that because venue was mandatory in Harris County, the trial court erred by even ruling on plaintiffs' motion to stay arbitration.  Apache requested that the court of appeals reverse and remand with instructions that the trial court compel

15

arbitration or, alternatively, vacate the orders denying arbitration and direct the trial court to transfer the matter to Harris County. Because Apache presented these requests in the alternative and the court of appeals sustained Apache's issue challenging the denial of arbitration, the court did not reach the venue issue. __ S.W.3d at __.

In this Court, Apache requests that we affirm the court of appeals' judgment ordering the case to arbitration and *additionally* order the case transferred to Harris County for any future arbitration-related disputes. But interlocutory review of a trial court's failure to enforce a mandatory venue provision is available only through a writ of mandamus. *See* TEX. CIV. PRAC. & REM. CODE § 15.0642 (providing that a party may apply for a writ of mandamus to enforce mandatory venue provisions); TEX. R. CIV. P. 87 (providing for the determination of a motion to transfer and specifying that "there shall be no interlocutory appeals from such determination"); *In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012) ("Mandamus relief is the proper remedy to enforce a mandatory venue provision when the trial court has denied a motion to transfer venue."). Apache has not cited any authority in support of its position that it is entitled to relief on the venue issue in this interlocutory appeal.[4] We therefore do not address the trial court's ruling on the motion to transfer venue.

## CONCLUSION

We hold that plaintiffs' request for a declaratory judgment regarding their defense and indemnity obligations is subject to mandatory arbitration. We also hold that the Wagner Oil

---

[4] In certain situations, an interlocutory appeal may be treated as a petition for writ of mandamus. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–53 (Tex. 2011). But Apache is the respondent in this Court, and it has not requested mandamus relief here. *Cf. id.* (directing the court of appeals to consider an appeal as a petition for writ of mandamus where the appealing party "specifically requested mandamus relief"). In any event, the writ of mandamus is a discretionary writ, and we decline to exercise our discretion to issue it in this case.

assignees are bound by the arbitration agreement. We therefore affirm the court of appeals' judgment, which remands for the district court in Tarrant County to order arbitration.

_____
J. Brett Busby
Justice

**OPINION DELIVERED:** April 9, 2021