**Opinion issued August 17, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00519-CV

_____

**TAYLOR MORRISON OF TEXAS, INC. AND TAYLOR WOODROW COMMUNITIES—LEAGUE CITY, LTD., Appellants**

**V.**

**ANDREW KOHLMEYER AND APRIL KOHLMEYER, Appellees**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CV-1285**

---

## OPINION ON REHEARING

Appellants Taylor Morrison of Texas, Inc. and Taylor Woodrow

Communities—League City, Ltd. (collectively, "Taylor Morrison") filed a motion

for rehearing of this Court's December 8, 2020 opinion.[1] We grant the motion for rehearing, and we withdraw our December 8, 2020 opinion and judgment. Without rebriefing and oral argument, we issue this opinion and judgment in their stead. *See* TEX. R. APP. P. 49.3. The disposition remains the same.

This is an accelerated appeal from the trial court's order denying arbitration. Andrew and April Kohlmeyer own a home built by Taylor Morrison. They sued for violations of the Texas Deceptive Trade Practices Act (DTPA), common-law breach of the implied warranties of habitability and workmanship, and negligent construction. Taylor Morrison filed a plea in abatement and moved to compel arbitration under a purchase agreement with the original owner, who was the predecessor-in-interest to the Kohlmeyers' predecessor-in-interest. The trial court denied the motion to compel arbitration and the plea in abatement.

---

[1]    Two justices who served on the panel on original submission, Justice Evelyn Keyes and Justice Russell Lloyd, are no longer sitting. Texas Rule of Appellate Procedure 49.3 provides:

> Unless two justices who participated in the decision of the case agree on the disposition of the motion for rehearing, the chief justice of the court of appeals must assign a justice to replace any justice who participated in the panel decision but cannot participate in deciding the motion for rehearing. If rehearing is granted, the court or panel may dispose of the case with or without rebriefing and oral argument.

TEX. R. APP. P. 49.3. Pursuant to Rule 49.3, Justice April Farris and Justice Veronica Rivas-Molloy have been assigned to the panel for the rehearing.

On appeal, Taylor Morrison argues that the trial court abused its discretion because the Kohlmeyers, although nonsignatories to the purchase agreement, were subject to the arbitration provision in the purchase agreement under the theories of direct benefits estoppel and implied assumption.

We affirm.

## Background

In 2013, Jason and Amanda Davis entered into a purchase agreement with Taylor Morrison for a house to be built at 4835 Piares Lane in League City, Texas. The purchase agreement expressly provided a one-year limited warranty. Taylor Morrison disclaimed the existence of any other warranty, and the Davises waived any other warranty.[2] The purchase agreement also prohibited the buyer from

---

[2] Paragraph 10 provided:

**b. Disclaimer and Buyer Waiver of Express and Implied Warranties:** SELLER EXPRESSLY DISCLAIMS, AND BUYER HEREBY WAIVES, ANY WARRANTIES, EXPRESS OR IMPLIED, OTHER THAN THE LIMITED WARRANTY, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, HABITABILITY, QUALITY OF CONSTRUCTION, OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE PROPERTY AND THE SUBDVISION/COMMUNITY IN WHICH THE PROPERTY IS LOCATED. BUYER ACKNOWLEDGES THAT OTHER THAN THIS LIMITED WARRANTY, SELLER IS MAKING NO OTHER REPRESENTATIONS, PROMISES, OR WARRANTIES OF ANY KIND, INCLUDING WITHOUT LIMITATION, ANY EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, QUALITY OF CONSTRUCTION, OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE PROPERTY OR THE COMMUNITY. IF ANY PROVISION OF THIS DISCLAIMER AND BUYER WAIVER OF EXPRESS AND IMPLIED WARRANTIES SHALL BE DETERMINED TO BE UNENFORCEABLE OR

3

assigning the agreement "without prior written consent of the Seller, which consent may be granted or withheld by Seller in Seller's sole and absolute discretion. . . . This Purchase Agreement shall bind the heirs, executors, administrators, and successors of the parties, and their assigns (subject to the limitations stated above)."

The purchase agreement required that disputes be settled by binding arbitration under the Federal Arbitration Act ("FAA"), stating that the parties had waived their rights "to have disputes litigated in a court or jury trial." The first page of the agreement referred to "Paragraph 11," which provided for mandatory binding arbitration of, among other things, "any dispute arising out of or relating to the terms of this purchase agreement or the planning, design, engineering, grading, construction or other development of the property."

> 11) DISPUTE RESOLUTION—ARBITRATION:
>
> ANY AND ALL CLAIMS, CONTROVERSIES, BREACHES OR DISPUTES BY OR BETWEEN THE PARTIES HERETO, ARISING OUT OF OR RELATED TO THIS PURCHASE AGREEMENT, THE PROPERTY, THE SUBDIVISION OR COMMUNITY OF WHICH

VOID AS AGAINST PUBLIC POLICY, THEN THE REMAINING PROVISIONS OF THIS DISCLAIMER AND BUYER WAIVER OF EXPRESS AND IMPLIED WARRANTIES SHALL BE DEEMED TO BE SEVERABLE THEREFROM AND ENFORCEABLE ACCORDING TO THEIR TERMS, AND BUYER SHALL BE DEEMED TO HAVE WAIVED ANY WARRANTIES, EXPRESS OR IMPLIED OTHER THAN THE LIMITED WARRANTY INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, HABITABILITY, QUALITY OF CONSTRUCTION, OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE PROPERTY AND THE SUBDIVISION/COMMUNITY IN WHICH THE PROPERTY IS LOCATED TO THE FULLEST EXTENT PERMITTED BY LAW.

4

THE PROPERTY IS A PART . . . WHETHER SUCH DISPUTE IS BASED ON CONTRACT, TORT, STATUTE, OR EQUITY, INCLUDING WITHOUT LIMITATION, ANY DISPUTE OVER . . . (f) ALLEGATIONS OF LATENT OR PATENT DESIGN OR CONSTRUCTION DEFECTS, . . . (g) THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE . . . DESIGN . . . OF THE PROPERTY, (h) DECEPTIVE TRADE PRACTICES . . . . [3]

In March 2016, the Davises sold the property to Gerald Morris Strong and his wife Peggy Strong, together with Rachel DeLeon and her husband Benjamin DeLeon. In September 2016, they in turn sold the property to Andrew Kohlmeyer,

---

[3]     The agreement further stated:

> NOTICE: BY INITIALING IN THE SPACE BELOW, BUYER AND SELLER AGREE TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS ARBITRATION AGREEMENT (PARAGRAPH 11 OF THIS PURCHASE AGREEMENT) ENTITLED "DISPUTE RESOLUTION– ARBITRATION" DECIDED BY NEUTRAL ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT, AND BUYER AND SELLER ARE GIVING UP ANY RIGHTS BUYER AND SELLER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL BY INITIALING IN THE SPACE BELOW BUYER AND SELLER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS ARBITRATION AGREEMENT. IF BUYER OR SELLER REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, BUYER OR SELLER MAY BE COMPELLED TO ARBITRATE UNDER THE FEDERAL ARBITRATION ACT. THE PARTIES' AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT ALL DISPUTES AR1SING OUT OF THE MATTERS INCLUDED IN THIS PARAGRAPH ENTITLED "DISPUTE RESOLUTION ARBITRATION" TO NEUTRAL, BINDING ARBITRATION.

"a married person." Two years later, in August 2018, the Kohlmeyers sent Taylor Morrison a demand letter, asserting that the house had "a substantial amount of mold growth throughout resulting from numerous water and moisture sources caused by construction defects." The following month, the Kohlmeyers filed the underlying lawsuit.

Taylor Morrison filed a plea in abatement and a motion to compel arbitration asserting that, although the Kohlmeyers were nonsignatories to the purchase agreement, they were nevertheless bound by it under the doctrines of equitable or direct benefits estoppel and implied assumption. The trial court initially granted the motion to compel arbitration, but, on reconsideration, the trial court denied the plea in abatement and request for arbitration. Taylor Morrison appealed.

**Analysis**

On appeal, Taylor Morrison argues that the trial court abused its discretion by denying the motion to compel arbitration and by denying the plea in abatement. Taylor Morrison asserts that the arbitration provision from the original purchase agreement with the Davises applies to this case and requires arbitration under the FAA.

## I. Standard of review

We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009);

6

*IPFS Corp. v. Lopez*, No. 01-18-00145-CV, 2018 WL 6175119, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 27, 2018, no pet.) (mem. op.). Although we defer to a trial court's factual findings, we review the trial court's legal determinations de novo, including questions of contract interpretation. *See Labatt Food Serv.*, 279 S.W.3d at 642–43; *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019) (appellate courts construe contracts under de novo standard of review).

## II.      Enforceability of arbitration agreements

Arbitration is a creature of contract, and parties seeking to compel arbitration must rely upon an agreement to arbitrate. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (orig. proceeding); *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A party "may be compelled to arbitrate only if it has entered into a valid arbitration agreement and if the claims raised fall within that agreement's scope." *Speedemissions*, 404 S.W.3d at 42 (*citing In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)). Ordinarily, "parties must sign arbitration agreements before being bound by them." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding) (*citing Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)). "Courts may not order parties to arbitrate

unless they have agreed to do so." *Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45, 48 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

"Texas law has long recognized that nonparties may be bound to a contract under various legal principles," and "contract and agency law may bind a nonparty to an arbitration agreement." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005). "Nonsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally." *Santander Consumer USA, Inc. v. Mata*, No. 03-14-00782-CV, 2017 WL 1208767, at *2 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.) (*citing Labatt Food Serv.*, 279 S.W.3d at 643). Under "common principles of contract and agency law," a nonsignatory to a contract may be bound to an arbitration agreement within it under six theories: "(1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Kellogg Brown & Root*, 166 S.W.3d at 739; *accord D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at *3 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.).

A party seeking to compel arbitration under the FAA must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *Rubiola*, 334 S.W.3d at 223 (*citing Kellogg Brown & Root*, 166 S.W.3d

at 737). When appropriate, the party seeking arbitration must also establish "that the arbitration agreement binds a nonsignatory." *Santander Consumer USA*, 2017 WL 1208767, at *2. After the proponent of arbitration has made these showings, "the burden shifts to the party opposing arbitration to raise an affirmative defense to the agreement's enforcement." *Venture Cotton Co-op.*, 435 S.W.3d at 227.

### III. Taylor Morrison has not shown the existence of a valid arbitration agreement that is binding on the Kohlmeyers.

The central issue in this appeal is whether the arbitration provision in the original purchase agreement signed by the Davises is binding upon the Kohlmeyers.[4] It is undisputed that the Kohlmeyers are nonsignatories to the original purchase agreement. Therefore, they can be required to arbitrate their claims only if some rule of law or equity binds them to the purchase agreement generally. *See Santander Consumer USA*, 2017 WL 1208767, at *2 (*citing Labatt Food Serv.*, 279 S.W.3d at 643). It is also undisputed that the following four of the six theories by which a nonsignatory can be bound by a contract do not apply in this case: incorporation by reference, agency, alter ego, and third-party beneficiary. *See Kellogg Brown & Root*, 166 S.W.3d at 739; *D.R. Horton-Emerald*, 2018 WL 542403, at *3. In the trial court

---

[4]  The Kohlmeyers also dispute that their claims, which they maintain are not contract claims, fall under the scope of the arbitration agreement. Because Taylor Morrison has not demonstrated that the Kohlmeyers are bound by the arbitration provision in the original purchase agreement, we do not address the second element needed to compel arbitration—that the claims are within the scope of the arbitration provision.

and on appeal, Taylor Morrison has relied on the remaining two theories—equitable estoppel and implied assumption—to support its argument that the Kohlmeyers should be required to arbitrate their claims.

Taylor Morrison argues that the Kohlmeyers' claims seek a direct benefit of the original purchase agreement in terms of the quality of workmanship and construction. Taylor Morrison also argues that the Kohlmeyers are bound to the arbitration agreement under a theory of implied assumption. We consider each of these theories by which Taylor Morrison seeks to bind the Kohlmeyers to the original purchase agreement, which they did not sign.

### A.    Equitable estoppel, specifically direct benefits estoppel, is not applicable.

"Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Kellogg Brown & Root*, 166 S.W.3d at 739; *see D.R. Horton-Emerald*, 2018 WL 542403, at *6. Direct benefits estoppel can bind a nonsignatory to an arbitration agreement in two ways. *See D.R. Horton-Emerald*, 2018 WL 542403, at *6. First, when a nonsignatory plaintiff alleges liability based solely on contract, he subjects himself to the contract's terms, including arbitration provisions. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527 (Tex. 2015); *see D.R. Horton-Emerald*, 2018 WL 542403, at *6. Second, a nonsignatory may be bound by an arbitration

10

provision when he has sought or obtained a benefit from the contract itself. *Weekley Homes*, 180 S.W.3d at 132. In this situation, direct benefits estoppel depends "on the nonparty's conduct during the performance of a contract." *Id.* at 132–33. For example, "a firm that uses a trade name pursuant to an agreement containing an arbitration clause cannot later avoid arbitration by claiming to have been a nonparty." *Id.* at 133.

Taylor Morrison maintains that the Kohlmeyers sued based on the original purchase agreement, and therefore, the first type of direct benefits estoppel requires them to arbitrate.

We consider the substance of a claim to determine whether it seeks to obtain the benefits of or to enforce the terms of a contract containing an arbitration provision. *See id.* at 131–32; *D.R. Horton-Emerald*, 2018 WL 542403, at *6. It is "not enough" that "the party's claim 'relates to' the contract that contains the arbitration agreement," it must "depend on the existence" of the contract and be "unable to 'stand independently' of it." *G.T. Leach Builders*, 458 S.W.3d at 527–28 (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006), then *Kellogg Brown & Root*, 166 S.W.3d at 739–40). The alleged liability must "arise[] solely from the contract or must be determined by reference to it." *G.T. Leach Builders*, 458 S.W.3d at 529 (quoting *Weekley Homes*, 180 S.W.3d at 132).

11

Whether a stranger to a contract may be compelled to arbitrate under a provision in the contract depends on the facts of the claims alleged. *See Weekley Homes*, 180 S.W.3d at 131–32. For example, nonsignatory adult children were held to the arbitration provision of a contract when they joined their parents' lawsuit for breach of contract related to the purchase of a mobile home in which the adult children lived. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755–56 (Tex. 2001). Similarly, a condo association that sued the development company on behalf of its members was also bound to a contractual arbitration provision because it sued for breach of contractual duties set forth in the contracts with the condo owners. *See Stanford Dev. Corp.*, 285 S.W.3d at 49. In contrast, subsequent purchasers were *not* bound by arbitration provisions in the original purchase agreements under the theory of direct benefits estoppel simply because the houses were built pursuant to the original purchase agreements. *D.R. Horton-Emerald*, 2018 WL 542403, at *6; *Toll Austin, TX, LLC v. Dusing*, No. 03-16-00621-CV, 2016 WL 7187482, at *3 (Tex. App.—Austin Dec. 7, 2016, no pet.) (mem. op.).

1. **The Kohlmeyers do not allege a breach of any provision of the original purchase agreement.**

Taylor Morrison argues that the Kohlmeyers are bound by the arbitration provision because they have alleged only contract claims. In particular, it contends that the Kohlmeyers allege defects arising from the initial construction of the house. Taylor Morrison asserts that the house was built to specific standards, which were

identified in the express limited warranty that was incorporated by reference in the purchase agreement. Taylor Morrison contends that because the purchase agreement and limited warranty were the "genesis of all duties regarding construction of the home," the Kohlmeyers' claims necessarily arise from the contract. Taylor Morrison maintains that because the Kohlmeyers seek a direct benefit of the original purchase agreement, they are estopped to deny the applicability of the arbitration provision.

In their live pleading, the Kohlmeyers alleged violations of the Deceptive Trade Practices Act, breach of the implied warranty of habitability, breach of the implied warranty of good workmanship, and negligent construction. All of these claims are based on their allegations that their home "has numerous construction and design defects that cause unacceptable levels of moisture and water to develop" inside the home "causing substantial mold growth." The Kohlmeyers did not allege that Taylor Morrison breached any specific provision of the original purchase agreement. They do not allege that the house was not built in accordance with the contract. They allege that a defect in the construction has led to substantial mold growth. Their pleading does not refer to the original purchase agreement or seek to enforce its terms, nor does it allege liability that arises solely from the original purchase agreement or that must be determined by reference to it. *See Kellogg Brown & Root*, 166 S.W.3d at 739 (party who sues to enforce the terms of a contract may be compelled to comply with an arbitration provision in that contract). Rather, the

Kohlmeyers' claims allege liability arising from general obligations imposed by common-law negligence and relevant statutes, such as the DTPA. *See Weekley Homes*, 180 S.W.3d at 132 ("Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law.").

In *D.R. Horton—Emerald*,[5] the Mitchells were subsequent purchasers of a home that was build pursuant to a purchase agreement between the homebuilder ("DRH") and the initial purchasers, the Jinaduses. 2018 WL 542403, at *1. The Mitchells later discovered foundation problems and sued for defective construction. *Id.* DRH moved to compel arbitration under a provision in the original purchase agreement between it and the Jinaduses. *Id.* at 2. The trial court denied arbitration. *Id.*

---

[5] In their brief, the appellants attempted to distinguish *D.R. Horton–Emerald* based on its holding that nonsignatories are not bound by an arbitration provision solely by virtue of being successors in interest. *See* Appellant's Brief at 16 ("Appellants do not seek to coerce Appellees into arbitration simply because they, 'as subsequent purchasers of the property, are bound as successors in interest to the terms of the ["Purchase Agreement"].'") (citing *D.R. Horton-Emerald v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403 at *3–*4 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.). *D.R. Horton-Emerald* addressed the successors-in-interest argument as well as arguments that the subsequent purchasers were bound by the arbitration agreement under the doctrines of direct benefits estoppel and implied assumption. *See D.R. Horton-Emerald*, 2018 WL 542403, at *4–6 (implied assumption) & *6–7 (direct benefits estoppel).

14

On appeal, DRH argued that the Mitchells' claim existed only "because DRH's obligations and duties regarding the quality of construction" were created by the original purchase agreement it had with the Jinaduses. We disagreed, noting that "the supreme court has rejected the type of 'but for' argument asserted by DRH, recognizing that 'the fact that the [plaintiff's] claims would not have arisen but for the existence of the [contract containing the arbitration agreement] is not enough to establish equitable estoppel.'" *Id.* (*quoting G.T. Leach Builders*, 458 S.W.3d at 529).

For the same reasons, Taylor Morrison's argument that direct benefits estoppel applies because the purchase agreement and limited warranty were the "genesis of all duties regarding construction" of the Kohlmeyers' house fails. *See G.T. Leach Builders*, 458 S.W.3d at 527–28; *D.R. Horton—Emerald*, 2018 WL 542403, at *7.

**2.    The economic loss rule cannot be applied to bind the Kohlmeyers to a contract they never signed.**

Taylor Morrison argues that the Kohlmeyers' claims seek recovery of damages to the house itself, which is "a claim for economic loss recoverable in contract alone." It suggests that because the Kohlmeyers seek to recover damages to the house itself, and the house was the subject of the original purchase agreement, the Kohlmeyers' claims are contract claims. We disagree. As we have explained, we determine the nature of a claim by looking to its substance.

Taylor Morrison's argument about the applicability of the economic loss rule is misplaced. *See, e.g.*, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (economic loss rule). The economic loss rule can prevent a plaintiff from obtaining recovery in both tort and contract when he seeks damages for a loss to the object of the contract.[6] *See id.* In this case, the question is whether the Kohlmeyers, who did not sign the purchase agreement with the arbitration provision, are bound by that contract under rules of law or equity. The economic loss rule "has no application in the appeal before us because it is not one of the six exceptions to the general rule that a non-signatory is not bound by an arbitration clause." *Toll Austin*, 2016 WL 7187482, at *4 (citing *Kellogg Brown & Root*, 166 S.W.3d at 739).

3. **The Kohlmeyers' claims for breach of the implied warranties of habitability and good workmanship do not arise solely from the original purchase agreement.**

Taylor Morrison argues that the direct benefits estoppel theory applies because the Kohlmeyers pleaded claims for breach of express or implied warranties.

---

[6]   "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234, 243 & n.2 (Tex. 2014); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The economic loss rule does not bar all tort claims that arise from a contractual setting. *See Chapman Custom Homes*, 445 S.W.3d at 718; *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (party cannot "avoid tort liability to the world simply by entering into a contract with one party"; "economic loss rule does not swallow all claims between contractual and commercial strangers").

Taylor Morrison relies on *Gupta v. Ritter Homes*, 646 S.W.2d 168 (Tex. 1983), for the proposition that the implied warranties of habitability and good workmanship are implicit in the contract between a builder and the original purchaser and they are automatically assigned to the subsequent purchaser. It also relies on *Centex Homes v. Buecher*, 95 S.W.3d 266 (Tex. 2002), for the proposition that the implied warranty of good workmanship is not independent of the original purchase agreement.

In *Gupta*, the Texas Supreme Court considered whether the there is an implied warranty under the DTPA from the sale of a used house. 646 S.W.2d at 168. The supreme court held that an implied warranty of habitability extends to subsequent purchasers to "cover latent defects not discoverable by a reasonably prudent inspection of the building at the time of sale." *Id.* at 169. The court explained: "As between the builder and the owner, it matters not whether there has been an intervening owner. The effect of the latent defect on the subsequent owner is just as great as on the original buyer and the builder is no more able to justify his improper work as to a subsequent owner than to the original buyer." *Id. Gupta* characterized an implied warranty as a contract remedy that is automatically assigned to a subsequent purchaser.[7] *Id.*

---

[7] The continued vitality of *Gupta* has been called into question by *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 87 & n.27 (Tex. 2004) (noting that *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 650 (Tex. 1996), "appears to overrule *Gupta v. Ritter Homes, Inc.*, in which we held an implied warranty asserted under the DTPA could be brought by a subsequent purchaser");

17

In *Centex Homes*, the Texas Supreme Court considered whether a homebuilder can disclaim the implied warranties of habitability and good and workmanlike construction that accompany a new home sale. 95 S.W.3d at 267. *Centex Homes* distinguished the two implied warranties. *Id.* at 273. The court explained that the implied warranty of habitability is a type of "strict liability" that protects the purchaser "from those defects that undermine the very basis of the bargain." *Id.* The implied warranty of habitability "requires the builder to provide a house that is safe, sanitary, and otherwise fit for human habitation." *Id.* The Supreme Court characterized the implied warranty of good workmanship as a "gap-filler" that "applies unless and until the parties express a contrary intention." *Id.* "It "requires the builder to construct the home in the same manner as would a generally proficient builder engaged in similar work and performing under similar circumstances." *Id.*

The Kohlmeyers' second amended petition alleged that Taylor Morrison breached the DTPA by "breach of an expressed or implied warranty" and by violating multiple "laundry list" items. *See* TEX. BUS. & COM. CODE § 17.46(b). They

---

*but see PPG Indus.*, 146 S.W.3d at 102 (Justice O'Neill, concurring in part and dissenting in part) (opining that *Amstadt* was "entirely consistent" with *Gupta*, and quoting *Gupta*: "As between the builder and owner, it matters not whether there has been an intervening owner. The effect of the latent defect on the subsequent owner is just as great as on the original buyer and the builder is no more able to justify his improper work as to a subsequent owner than to the original buyer.").

18

also pleaded claims for breach of the implied warranties of habitability and good workmanship.[8]

"Implied warranties are created by operation of law and are grounded more in tort than contract." *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704–05 (Tex. 2008) (quoting *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984)); *cf. Centex Homes*, 95 S.W.3d at 274–75. The Supreme Court has observed that "[c]auses of action for breach of implied warranties"—such as the implied warranties of habitability and good workmanship—"defy simple categorization because an implied warranty is 'a freak hybrid born of the illicit intercourse of tort and contract.'" *Nghiem v. Sajib*, 567 S.W.3d 718, 723 (Tex. 2019) (quoting *JCW Elecs.*, 257 S.W.3d 701, 705 (Tex. 2008) (quoting William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 YALE L.J. 1099, 1126 (1960))). They can "have feet in both camps, created by operation of law in connection with a contract." *Nghiem*, 567 S.W.3d at 723. ("The implied warranty of workmanlike repairs is a creature of the common law," and it can "be asserted in a common-law action.").

The Kohlmeyers' claims for breach of the implied warranties of habitability and good workmanship do not "arise[] solely from the contract" nor must they "be

---

8    On appeal, the Kohlmeyers have indicated that they have not brought an express warranty claim, and we see no such claim independent of the DTPA claim in their live pleading.

determined by reference to it." *Id.* (quoting *G.T. Leach Builders*, 458 S.W.3d at 529). The implied warranties of habitability and good workmanship arise by operation of law. *See JCW Elecs.*, 257 S.W.3d at 704–05. While the question of whether Taylor Morrison validly disclaimed the implied warranty of good workmanship may be determined by reference to the original purchase agreement, the warranty itself does not arise solely from the contract.

**4.     The Kohlmeyers' claim for damages to possessions in their house.**

Taylor Morrison acknowledges that direct benefits estoppel does not apply when a claim does not seek a direct benefit of the contract, but it relies on general duties imposed by law or equity. And it concedes that the Kohlmeyers' claim for damages to goods in their residence does not seek a direct benefit of the purchase agreement. However, it argues that this claim is collateral to their claim for damages to the house itself and it cannot transform a contract claim into a tort claim.

We agree that the Kohlmeyers' claims for their possessions that were damaged inside the house cannot transform a contract claim into a tort claim. However, we have already concluded that the Kohlmeyers' claims for damages to the house itself did not seek a direct benefit of the purchase agreement or state a contract claim.

We conclude that direct benefits estoppel does not apply.

20

**B.  Implied assumption is not applicable.**

Taylor Morrison also argues that the doctrine of implied assumption requires the Kohlmeyers to arbitrate their claims because the implied warranties of habitability and good workmanship were implicit in the original purchase agreement and were automatically assigned to them under *Gupta*. In addition, it argues that the benefit of these implied warranties was entwined with the obligation to arbitrate under the original purchase agreement. We disagree.

"Generally, a party cannot be held liable under another party's contract without an express or implied assumption of the obligations of that contract." *NextEra Retail of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). It is undisputed in this case that the Kohlmeyers did not expressly assume obligations under the original purchase agreement. *See id.* ("[T]here must be actual promissory words, or words of assumption, on the part of the assignee for there to be an express assumption of contractual obligations."). Taylor Morrison argues that the Kohlmeyers impliedly assumed both the benefits and obligations of the original purchase agreement.

"[T]he assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumes them." *Id.* "An implied assumption of obligations may arise 'when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from

21

denying assumption and the assignee would otherwise be unjustly enriched.'" *Id.* at 228 (quoting *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 125 (Tex. App.—Houston [14th Dist.] 1996, writ denied)); *see D.R. Horton-Emerald*, 2018 WL 542403, at \*4 (holding that claims for warranty services were not entwined with purchase contract when limited warranty was a separate instrument and claims did not refer to purchase contract); *Toll Austin*, 2016 WL 7187482, at \*4 (rejecting implied assumption of obligations in purchase contract when contract terms prohibited assignment).

"[T]he 'assumption' theory by which non-signatories may be bound to arbitration agreements only applies to contracts that have been *assigned* from one party to another." *Toll Austin*, 2016 WL 7187482, at \*4. Nothing in the record indicates that there was an assignment of the original purchase agreement to the Kohlmeyers. In addition, the original purchase agreement prohibited assignment without prior written consent from Taylor Morrison: "This Purchase Agreement may not be assigned by Buyer without prior written consent of Seller, which consent may be granted or withheld by Seller in Seller's sole and absolute discretion." Nothing in the record indicates that Taylor Morrison gave prior written consent to assign the contract. *See Zbranek Custom Homes, Ltd. v. Allbaugh*, No. 03-14-00131-CV, 2015 WL 9436630, at \*4 (Tex. App.—Austin Dec. 23, 2015, pet. denied) (mem. op.) (holding no evidence that construction contract was assigned to subsequent

purchasers when contract required consent for assignment and the record included no evidence that either party consented to assignment of the contract). Because Taylor Morrison has not demonstrated that there was any assignment of the original purchase agreement to the Kohlmeyers, we reject the argument that the doctrine of implied assumption applies. *See Toll Austin*, 2016 WL 7187482, at *4 (rejecting theory of implied assumption when the plaintiffs were not assignees of the original homebuilding contract).

We conclude that implied assumption does not apply.

## IV. The trial court properly denied the motion to compel arbitration.

Without commenting on the ultimate viability of the Kohlmeyers' claims that are independent of the contract, we hold that those claims are not susceptible to arbitration because they are just that—independent of the contract. We conclude that Taylor Morrison has not shown that the Kohlmeyers, as nonsignatories, are bound by the arbitration provision in the original purchase agreement, and therefore it has not established the existence of a valid agreement to arbitrate. *See Santander Consumer USA*, 2017 WL 1208767, at *2. Having reached this conclusion, we do not need to consider whether the Kohlmeyers' claims fall within the scope of the arbitration provision in the original purchase agreement. *See Dusing*, 2019 WL 2127885, at *4 (courts do not reach the second requirement for compelling arbitration if the first is not established). We hold that the trial court did not abuse

23

its discretion by denying the motion to compel arbitration. *See Labatt Food Serv.*, 279 S.W.3d at 643.

## Conclusion

We grant the motion for rehearing, and the motion for reconsideration en banc will be denied by separate order of the court. We affirm the interlocutory order of the trial court. All other pending motions are dismissed as moot.



Peter Kelly
Justice

Panel consists of Justices Kelly, Rivas-Molloy, and Farris.